Evans *vs.* The State of Georgia.

REDDING EVANS, plaintiff in error, *vs.* THE STATE OF
GEORGIA, defendant in error.

1. Even immediately after an assault endangering life or limb, the kill-
ing of an assailant by the assailed will be manslaughter, if it be appa-
rent that the assault, and with it the personal danger of the assailed,
had ended, and that the mortal wound was inflicted as the assailant
had ceased from the attempt, and was retreating.
2. It is no sufficient ground for a new trial that illegal evidence was ad-
mitted, when no objection was made to its introduction when offered,
nor at any time anterior to the rendition of the verdict.
3. On the trial of a free person of color for the offence of murder, it is
no error for the Court to charge the jury, "that it was not necessary
for them to be satisfied beyond a reasonable doubt that the prisoner
was a free person of color; the question of his *status* in society had
nothing to do with his guilt or innocence, but that it was merely des-
criptive; and that if they were satisfied from the evidence that he was
a free person of color, that was sufficient on that point."

Indictment for murder, in Miller Superior Court, tried
before Judge WILLIAM C. PERKINS, at April Term, 1861.

The facts and circumstances attending the homicide in
this case, as shown by the testimony, are substantially as
follows:

Redding Evans, the accused, was the reputed son of one
Dolly Evans, who was generally known and regarded as a
free person of color—a mulatto, half black and half white;
the defendant lived with, and called Dolly Evans mother,
when he was a boy, but had been known to deny that she
was his mother; James Smith, the deceased, was a married
man, but at the time of the homicide was living separate
from his wife; some time before the difficulty, Evans and
Smith had been unfriendly, on account of Evans' criminal
intimacy with Smith's wife; they had also had a misunder-
standing about some chickens of Evans' eating up some
growing corn belonging to Smith, and Evans told Smith he
had better not bother his chickens, for he, Evans, might kill
him if he did. On one occasion, Smith, his wife, and
Evans, were all on the bed together, and Evans and Mrs.
Smith were under the cover; Smith ordered Evans out of

the house, but he did not go; Smith then went out, and Evans followed him and knocked him down, and made him come back in the house and sit down, and Evans then went back to bed with Smith's wife, in the presence of Smith and his children; Evans was in the habit of going to bed with Mrs. Smith. On an occasion previous to the homicide, Evans said, that Smith was no benefit to the country, and if he bothered him, he, Evans, would cut his throat; on another occasion, Evans, in speaking of Smith, said, that the latter had bothered him a good deal, and if he did not mind he would put him where the dogs would not bite him; that they had him on a scout from a warrant, but that he did not intend to leave; and that if they did not let him alone, he would kill some of them; he further said, that if they would let him kill Smith and Cook, and beat Ranew, they might do what they pleased with him. Evans had threatened to kill Smith on other occasions. On the morning of the homicide, Smith went to the house where his wife and children lived, because, he said, that he had heard Evans was going to run away with his wife, and was going down after his children. Smith had been at the house where his wife lived but a few minutes before Evans also came, and as Evans approached the house, Smith fired upon him with a single-barrelled shot gun, and wounded him in the side. Evans then fired upon Smith five times, with a revolver, wounding him in the side, on the arm, and twice in the abdomen, of which he died in a few hours. The homicide occurred in Miller County, on the 25th day of December, 1859. Smith was walking around and off from Evans, when the latter killed him. The record does not show that any exceptions were taken to the competency or admissibility of any part of the testimony offered on the trial.

The presiding Judge, amongst other things, instructed the jury " that it was not necessary for them to be satisfied beyond a reasonable doubt that the prisoner was a free person of color; the question of his *status* in society had nothing to do with his guilt or innocence, but that it was merely descriptive, and if they were satisfied from the evidence that he

was a free person of color, that was sufficient on that point." The jury rendered a verdict against the defendant, of guilty of voluntary manslaughter, and his counsel moved for a new trial on the following grounds, to-wit:

1st. Because the verdict was contrary to the evidence, and strongly and decidedly against the weight of the evidence, and contrary to law and the charge of the Court.

2d. Because the Court erred in charging the jury as hereinbefore set forth, as to the proof necessary to sustain the allegation in the indictment, that the accused was a free person of color.

3d. Because the Court erred in permitting the State to prove that it was the general reputation in the neighborhood that Dolly Evans was a free person of color, and that she was reputed to be the defendant's mother.

4th. Because, under the testimony, the defendant should not have been convicted, as the homicide was justifiable.

The Court overruled the motion and refused the new trial. That decision is the error alleged in the bill of exceptions.

A. HOOD, for plaintiff in error.

F. D. BAILEY, Solicitor General, *contra.*

*By the Court*—JENKINS, J., delivering the opinion.

After verdict in the Court below, the plaintiff in error moved for a new trial, on several grounds, as set forth in the statement. The first and second grounds will be considered together, because the correctness of the verdict must be determined by applying the law to the facts in evidence.

There can be no doubt that the deceased came to his death by wounds inflicted by the plaintiff in error, with intent to kill him. The justification rests upon the alleged necessity imposed upon the plaintiff in error, to kill the deceased in order to save his own life. If this necessity appear from the evidence, the verdict should have been set aside and a new trial ordered. But if, on the contrary, it appear that the slayer was in no imminent danger when he inflicted the mor-

Evans *vs.* The State of Georgia.

tal wound; that the deceased had either made no assault
upon him or had ceased from it, and was retiring, it would
be difficult to make out a case of self-defense.

This defense rests mainly upon the fact that deceased fired
upon and wounded the plaintiff in error, with a shot-gun. It
is not very apparent from the evidence whether this shot was
made whilst the plaintiff in error was in the act of drawing
his pistol or before he attempted so to do. But in the doubt
attaching to this point, justice to the accused may entitle him
to the assumption that deceased leveled his gun and was in
the act of firing, before plaintiff in error drew, or attempted
to draw, his pistol. This places the deceased in the position
of assailant. But does it make out the defense? The evidence
does not show either that the deceased continued the assault
or that he had the means of continuing a dangerous assault.

The witnesses say he had a shot-gun, and do not say it was
a double-barrel gun, or that deceased had any other weapon,
or was reloading, or was continuing to advance upon the ac-
cused. On the contrary, two witnesses say distinctly, that
the accused shot four five times at deceased, inflicting as many
wounds, and that while he was so shooting, deceased was
walking away from him. The testimony is, that deceased
had only a single-barrelled shot-gun, and after having deliv-
ered his fire, was powerless in the presence of a foe armed
with a revolver. The jury were abundantly justified in
drawing this inference from the evidence; and then the ques-
tion would arise, did the accused inflict those four or five
wounds upon the deceased under the excitement of reasona-
ble fears for his personal safety, or was he prompted by a sud-
den, violent impulse of passion occasioned by the assault then
done and ended. The verdict evinces that they arrived at
the latter conclusion, and in view of the seventh, thirteenth
and fifteenth sections of the fourth division of the Penal
Code, we perceive in their finding no error of law or of fact.
We sustain this verdict upon this ground, that even imme-
diately after an assault endangering life or limb, the killing
of the assailant by the assailed will be manslaughter, if it be
apparent that the assault, and with it the personal danger of

the assailed, had ended, and that the mortal wound was inflicted as the assailant had ceased from the attempt and was retreating.

The statistics of crime in Georgia show that the lower grades of felonious homicide are of much more frequent occurrence than the higher. This may result from the inclination of jurors to acquit entirely, where the evidence does not justify a conviction for murder.

In all cases where a just discrimination is exercised by juries, Courts should scrupulously avoid interference with their verdict.

The next ground of exception is, that the Court erred in admitting common repute, as evidence of the maternity, and consequently, social position, of the accused. We have searched the record in vain for evidence that objection was made to the introduction of this testimony when offered, or at any time anterior to the rendition of the verdict. If, therefore, it were illegal evidence, of which we are by no means satisfied, we could not entertain the exception.

The remaining exception is to the charge of the Court, regarding the degree of certainty as to the social caste of the accused, necessary to a conviction. In this charge, we understand the Court to have discriminated between the question of guilt or innocence, and the question of social caste, and to have intimated that a less degree of certainty was requisite upon the latter than upon the former question, and he concludes with these words: "If you are satisfied from the evidence that he is a free person of color, that is sufficient on that point." This is equivalent to saying, unless so satisfied, the evidence is insufficient on that point; and in all this we see no error. Our conclusion is, that the motion for a new trial was properly overruled.

Let the judgment be affirmed.