CHESTNUT *v.* THE STATE.

1. Allowing an irrelevant affidavit which could not in any manner affect the real merits of a motion for a new trial to be read to the judge on the hearing thereof affords no cause for reversing a judgment overruling the motion.

2. A ground of such a motion, complaining of a refusal to grant a continuance on account of the absence of a witness, is without merit when it fails to set forth what facts the movant expected to prove by this witness, and merely avers that these facts are " stated in the brief of evidence."

3. When in preparing a motion for a new trial it is designed to except to the admission of evidence or to a refusal to rule out evidence, such motion must disclose what, if any, objection was made to the evidence when introduced,

or the ground, or grounds, on which the motion to rule out was based.  If in the present case any illegal evidence properly objected to was introduced, it was not of sufficient materiality to warrant the granting of a new trial.

4. When the defense to an indictment for murder was that the accused did the killing under the fears of a reasonable man that a felony was about to be committed upon him, and his own statement at the trial left it open to question whether the alleged assault upon him therein set up as the ground of that fear was, as the same appeared to him at the time of the homicide, felonious or of a less serious nature, and when, in view of all the evidence and the statement, the jury would have been warranted in finding that the accused did not really entertain any such fear, but that there was a minor assault upon him sufficient to justify the excitement of passion, it was not erroneous to charge upon the law of voluntary manslaughter, and, in so doing, give appropriate instructions for applying it to the issues involved.  As the evidence and the statement in this case authorized such a charge and such instructions, the ground of the motion alleging generally that the court erred in charging upon the law of voluntary manslaughter is not well founded.  Moreover, the charge itself with respect to this matter was in substance correct.

5. The charge as to words, threats, menaces, contemptuous gestures, and presentation of weapons, to which exception is taken, was correct.  The verdict was fully warranted, and no error was committed in refusing to set it aside.

Submitted October 17, — Decided November 30, 1900.

Indictment for murder.  Before Judge Butt.  Muscogee superior court.  May term, 1900.

From the evidence it appeared that for some weeks preceding the homicide there was bad feeling between Chestnut, the accused, and Walsh, the person killed, and that each had threatened to kill the other.  On the evening of the homicide they met near a barroom, and Chestnut invited Walsh and others to go in and drink with him, and they did so.  Walsh appeared to be intoxicated, and had a dagger in his hand.  Chestnut soon left the barroom, and as he was leaving Walsh said, "Sneak out," and called him a coward.  Later, Walsh went into the street with one Gallatt, and was arrested by a policeman; but Gallatt having promised to take him to his home, across the river, he was released.  About eight o'clock in the evening Gallatt and Walsh were on their way towards a bridge that crossed the river, when they saw Chestnut in front, coming in their direction.  There was evidence that Walsh, on seeing Chestnut, said, "There is the damned scoundrel now," and went towards him, with his hand raised and a knife, or something that looked like a knife, in it.  Gallatt testified that he saw no knife.  As Walsh came up Chestnut stepped back, drew a pistol, and fired several times at Walsh, inflicting three wounds, from

which death resulted. Some of the shooting took place after Walsh had fallen. Gallatt ran off when the shooting began. Chestnut started off after it was over, but returned, and remarked to others who then came up that he had acted in self-defense; and he pointed to a knife in Walsh's hand, or lying near it. There was evidence that the knife had belonged to Chestnut, and that after Walsh had fallen Chestnut stooped over him and dropped something; but this was contradicted. A dirk was found in the pocket of the deceased. He had the reputation of being violent when under the influence of intoxicating liquor.

Other facts appear in the following opinion. To what is there said as to the grounds of the motion for a new trial, it is sufficient to add that the instruction dealt with in the 5th headnote was, that "No amount of words, threats, menaces, or contemptuous gestures, or presentation of weapons, without a manifest intention to then and there use them, would justify the killing."

*T. T. Miller,* for plaintiff in error.
*S. P. Gilbert, solicitor-general,* contra.

LITTLE, J. Chestnut was, on his trial under an indictment for the murder of one Walsh, convicted of the offense of voluntary manslaughter, and sentenced to a term of imprisonment. The error which it is alleged was committed by the trial judge was in overruling his motion for a new trial. In this motion a number of grounds are set out. There is but one of these which we find it necessary to discuss, even in a limited manner, and that is the alleged error in charging the jury the law of voluntary manslaughter. The first, second, third, and fifth headnotes deal with the other grounds of the motion, and the questions arising thereunder need no further elaboration.

The eleventh ground of the motion alleges that the court committed error in charging the law of voluntary manslaughter, because, under the facts of the homicide as disclosed by the evidence, the defendant was either guilty of murder or justified in what he did. If it be true, as stated, that the evidence showed the defendant to be guilty of murder, or that the homicide of Walsh was justifiable, then it would have been error to charge the law in relation to voluntary manslaughter; because, evidently, the jury trying the issue concluded that the evidence did not require a finding that the

defendant was guilty of murder, and as there could then have been but one other legal result, that is, an acquittal, the charge in relation to voluntary manslaughter was hurtful to him. *Robinson* v. *State,* 109 *Ga.* 506. But we do not concede that the law of voluntary manslaughter was not involved under some of the evidence in the case. The evidence for the State, when taken as a whole, makes out a case of murder against the plaintiff in error, and had the jury rendered that verdict, it would have been amply supported by the evidence. Nor did the evidence introduced on the part of the defendant, if the jury believed it, demand a finding that the homicide was justifiable. Some of this evidence would certainly support that finding; other portions of it, however, indicate that the homicide was not necessarily justifiable, and would, we think, support a verdict for voluntary manslaughter. Mrs. Lucy Jones, a witness for the State, testified, among other things: " There were five shots fired. I think all but one was fired before he [Walsh] fell, and the others fired just as he fell." Joe Boggs, a witness for the State, who saw the shooting, also testified that "some of the shots were fired after Mr. Walsh fell; one shot is as many as I can say that was fired after he fell." Claud Tillman, another witness for the State, testified: " I think there was five shots fired. Walsh fell about the second shot. After he fell Mr. Chestnut stooped down over him." J. B. Baze, another witness for the State, testified that he had passed Walsh eighteen or twenty feet when " I heard two rapid shots in succession. As I turned around, I saw Mr. Chestnut with a revolver in his hand, and Walsh was going around in a circle like he was going to fall. I did not turn until two shots were fired almost together. I heard other shots. Walsh was lying down at the time they were fired. When the two first shots were fired, Chestnut was almost in arm's length of Walsh." Further in his evidence the same witness testified: "There were two more shots fired after Mr. Walsh fell, or was going down,—I couldn't say positively which, but it was almost together."

The evidence of these witnesses supports the theory that the accused fired at the deceased one or more times after he had fallen. If he did, the firing could not have been done to prevent the deceased from committing a felony upon him, nor with any reasonable fear of that result. He was only justified in shooting Walsh to prevent the commission of such a felony. The theory of the de-

fense was, that the slayer acted under the fears of a reasonable man that such a felony was being attempted on the part of the deceased, and shot to prevent it; but the theory must fail as to the subsequent shots, when it appears that, after the deceased was stricken by the bullets fired by the slayer and had fallen, the latter continued to fire upon him. We do not say that such was the case; but the jury was authorized to say so from the evidence of the witnesses we have named. If their evidence in this particular be true, then the shots fired after the deceased had fallen were the result of malice towards the deceased, or of the sudden heat of passion aroused by the attack which the accused said the deceased made upon him; because the necessity for repelling such attack had ceased, and they were not, therefore, justifiable. If they were the result of passion engendered by the attack which the accused said the deceased made upon him, then the law of voluntary manslaughter was involved. This principle is not a new one, but well settled in the criminal law, and is clearly stated in the case of *Evans* v. *State*, 33 *Ga.* 4, where this court said: "Even immediately after an assault endangering life or limb, the killing of an assailant by the assailed will be manslaughter if it be apparent that the assault, and with it the personal danger of the assailed, had ended, and that the mortal wound was inflicted as the assailant had ceased from the attempt, and was retreating." In order that the principle referred to may be applied in this case, let us assume that the statement made by the accused that Walsh was coming on him with a deadly weapon, and to prevent a felony on his person he shot the deceased, is true. Then the accused would be justified only so far as it was necessary for him to shoot the deceased to prevent the commission of this felony; and he would not be justified in shooting the deceased when as a reasonable man he could no longer entertain a fear that his life or body was in danger. Certainly, when the deceased had fallen helpless to the ground as the result of his previous shots, the assault had ceased, and the accused was then in no danger; and if he were not, his subsequent shots were unjustifiable, and if such shots caused the death of Walsh, the accused would be guilty of murder or voluntary manslaughter as the jury might find them to have been made from motives of revenge or as the result of passion. As to whether the subsequent shots inflicted any mortal wound the evidence is silent, but it is clearly shown that the deceased came to

his death because of two pistol-shot wounds inflicted by the accused, either of which wounds might have been the result of the first or the last shot fired at him.   Under this view of the case, the principle of law above referred to authorized the trial judge to give in charge the law of voluntary manslaughter.   Again, in giving an account of the circumstances of the homicide, the accused, in the course of his statement, said that he met Walsh at the point where the evidence discloses the homicide occurred, and that the latter said, "There is the damned rascal now; I will settle with him." "I ran backward until I got my pistol out.   He was coming on me all the time with a knife or *something* in his hand, and I thought it was that dirk, and I shot him."

Where one kills another to prevent a mere assault, the slayer is guilty, under our law, of voluntary manslaughter.   Under this statement of the accused, whether the deceased in fact had in his hand a deadly weapon when he advanced upon the accused is left in doubt.   If he did have a deadly weapon and advanced upon the accused with a threat, and the circumstances indicated a present intention to use the same, then the jury might well have found that the accused entertained the fears of a reasonable man that the deceased intended to commit a felony upon him.   But if in fact the deceased did not have a deadly weapon when he advanced, then the jury might well have found that the alleged fear was not reasonable or well founded, or that no such fear really existed at all; and in either of these events the homicide was not justifiable. So that the question whether the deceased was armed with a deadly weapon or not, at the time the accused says that he advanced upon him, becomes material.   The manner of the advance, as well as the weapon with which the deceased was armed, would be circumstances which indicated his intention; and if in fact he had no weapon at the time and there was no such fear, or, if there was, there were no reasonable circumstances to authorize it, then, while the advance might well have been considered the equivalent of an assault, it could not have been more; and if an assault, then the slaying of the deceased to prevent that assault would have been voluntary manslaughter.   So that, under the statement of the accused himself, it was left in doubt whether or not, at the time the deceased advanced upon him, the accused shot him to prevent the commission of a felony or to repel a bare assault; and

even under the statement, it was proper for the judge to instruct the jury, as he did, the law in relation to justifiable homicide un- der the fears of a reasonable man that a felony was about to be committed on his person; and in view of the other contingency, that is, that it was not a dirk or other weapon which the deceased had in his hand, it could not have been error for the judge to in- struct the jury as to the law of voluntary manslaughter, so that they might grade the homicide according to their belief, from the evidence and the statement, whether the killing was done under reasonable fears, to prevent the commission of a felony, or to repel an assault. This is what he did, and in doing so, in our judgment, he committed no error. Taking the evidence as a whole, as we have before said, a verdict of guilty of murder might have well been supported; but under the testimony of the witnesses who declared that the accused fired on deceased after the assault had ceased, and the statement of the accused himself, which leaves in doubt the fact whether the deceased was armed at the time he says he ad- vanced upon him, the offense of voluntary manslaughter should have been considered in grading the homicide.

*Judgment affirmed. All the Justices concurring.*