## LYNN *v.* THE STATE.

1. By the act approved August 18, 1911 (Acts 1911, p. 81), creating the Dublin judicial circuit, four terms of court were created for Laurens county, namely, January, April, July, and November; and it is provided in this act that the grand juries of the counties of the circuit shall not be convened except for the spring and fall terms of the court, unless in the discretion of the presiding judge it shall be deemed expedient to call a special session of the grand jury at some other term. At the close of the October term, 1912, of the superior court of Laurens county, the presiding judge drew the required number of names of persons to serve as grand jurors at the January term, 1913. Before any indictment was returned against them the defendants challenged the array of grand jurors, for the alleged reason that they could only be convened legally at the April and October terms of the court. A demurrer to the challenge was sustained. After indictment and before arraignment the defendants filed a plea in abatement, substantially on the same grounds as set out in the challenge to the array. A demurrer was likewise filed to the plea in abatement, and was sustained. *Held*, that the court did not err in sustaining the demurrers.

2. Where two persons are jointly indicted for murder, and a panel of forty-eight jurors are put upon them as trial jurors, and they elect to be tried together, they can not demand a panel of ninety-six jurors from which to strike.

3-6. The court did not err in refusing the written requests to charge the jury, as contained in the third, fourth, fifth, and sixth divisions of the opinion.

7. The instruction contained in the seventh division of the opinion was not erroneous.

(*a*) A conspiracy may be shown by circumstantial evidence as well as direct testimony.

(*b*) That there was no conspiracy charged in terms in the bill of indictment between the defendants jointly indicted does not make the giving of a correct instruction to the jury on the subject of conspiracy error, where there is evidence to authorize such a charge.

8. Where objection is made to the admissibility of testimony and the court does not rule upon the objection, but the testimony is allowed to go to the jury, the failure of the court to rule upon the evidence, under the facts, is equivalent to overruling the objection.

(*a*) That a witness did not hear all of the conversation between two defendants jointly indicted, and about which he is asked to testify, is no ground of objection to his stating so much of it as he did hear.

9. Where two persons were jointly indicted for murder, and the State relied largely upon circumstantial evidence for conviction and the existence of a conspiracy to commit the murder, it was not error to admit in evidence the following letter to the deceased (which, according to admission of counsel for defendants in open court, was written jointly by the defendants), as tending to show a conspiracy between them: "Dublin, Ga. Dec. 13th 1912. Uncle Frank Hightower Alonzo and the children is planning to go and getting ready to go to Wilks Co next

Tuesday, they will be gone three days you dont know how desolate it is out here when me and the baby is left alone. We cant all leave on account of our stock. We have plenty of lightwood ready cut. You can come in your wagon every day and get a load. I will give you a good, good good dinner. Please come visit me in my loneliness. You will never regret the time. Alice Lynn R 6 Dublin, Ga."

10. A witness was called by the defendant for the purpose of proving his general good character. On direct examination he testified that he did not know the defendant's general character; that all he knew was personal. The court declared the witness incompetent, and he withdrew from the witness chair. Subsequently the State asked leave to put the witness back on the stand as defendant's witness and cross-examine him, which was allowed to be done by the court. The witness, over objection of defendant's counsel, testified in answer to a question from State's counsel: "I have heard him [the defendant] use words that carried with them a meaning which implied a threat on his [one Davis's] life." *Held*, that this was error, but under the facts of this case it will not require a new trial.

11. The evidence is sufficient to authorize the verdict.

     JUNE 13, 1913. REHEARING DENIED JULY 21, 1913.

Indictment for murder. Before Judge Hawkins. Laurens superior court. April 19, 1913.

*Davis & New,* for plaintiff in error.

*T. S. Felder,* attorney-general, *E. L. Stephens,* solicitor-general, *J. S. Adams,* and *Davis & Sturgis,* contra.

HILL, J. At the January term, 1913, of the superior court of Laurens county, A. L. Lynn and Alice Lynn, his wife, were jointly indicted and tried for the murder of F. M. Hightower.. The jury rendered a verdict finding the defendant Alice Lynn not guilty, and the defendant A. L. Lynn guilty, with a recommendation of life imprisonment in the penitentiary. To the judgment of the court overruling his motion for a new trial A. L. Lynn excepted.

1.. One ground of the amended motion for a new trial is because the court erred in sustaining a demurrer filed to the challenge to the array of grand jurors before they had returned a true bill against the defendants. The grand jury by whom the defendant was indicted was drawn at the regular fall term of court, and summoned to appear at the next term, to wit, the January term, when they were impaneled. At that term the defendant was indicted. He challenged the array on the ground that the grand jury was not a legal one. He contended that the provision of the act creating the Dublin circuit (Acts 1911, p. 82), which provides that the grand juries of the counties of that circuit "shall

not be convened except for the spring and fall terms of the court, unless in the discretion of the presiding judge it shall be deemed expedient to call a special session of the grand jury at some other term," was unconstitutional because not uniform with the practice in regard to summoning grand juries for each term of court prescribed by general laws, and also because the grand jury were not called in special session at the January term of court in accordance with that act, if it were constitutional. It is unnecessary to decide whether the provision of the act above quoted is or is not constitutional. In either event, the grand jury which indicted the defendant was a legal grand jury, and that is all that concerns him. Under the general law provision is made for having a grand jury at each term of court. Penal Code, § 823. If, therefore, the above-quoted provision is invalid and should be stricken from the act, under the general law a grand jury could be drawn at the fall term of court and summoned for the next regular term thereafter, to wit, the January term. If, on the other hand, the provision of the act above quoted should be held to be constitutional, there is nothing in it which would make the grand jury so drawn and summoned an illegal grand jury. It declares that the grand juries shall not be "convened" except for the spring and fall terms of the court, unless in the discretion of the court it shall be deemed expedient "to call a special session of the grand jury at some other term." When the presiding judge drew a grand jury at the fall term of court and caused the jurors so drawn to be summoned to appear at the January term thereafter, and impaneled them and caused them to proceed to discharge the duties of a grand jury, this was sufficient evidence that in his discretion he deemed it necessary for the grand jury to be in session at that term, and that he called a special session of the grand jury thereat. No formal order or declaration further than this was necessary for that purpose. The act requires the grand jury to be convened at the spring and fall terms of the court, and leaves it to the discretion of the presiding judge to call a special session of the grand jury at some other term. It was held in *Tompkins* v. *State,* 138 *Ga.* 465 (75 S. E. 594), that grand jurors who had served at one regular term of the superior court were declared by the legislature to be ineligible for jury duty at the next succeeding term, and that under the act creating the Dublin circuit the presiding judge could not summon

a grand jury which had served at one regular term to serve at the next succeeding regular term of court. It was suggested that probably, under the power to call a special session of the grand jury at some other term, the same grand jury might be recalled at such a term as grand juries could be called in special session under the general law; but what was said in regard to calling back a grand jury to serve at two succeeding terms was not a construction of the entire provision of the act, or a declaration that it had no meaning except in regard to such a situation. In the present case there was no effort to require a grand jury which had served at one term to return and serve at the next succeeding regular term. A new grand jury was drawn at the fall term and summoned to serve at the January term, and then impaneled. As to that situation, the action of the judge was a sufficient compliance with the provision of the act authorizing him to call a special session of the grand jury at the January term. Thus, if the constitutional attack on this provision of the act should be sustained, under the general law the grand jury which indicted the defendant was legally drawn, summoned, and impaneled at the term when the indictment was found. If the provision of the act should be treated as valid, what was done was a sufficient compliance with its terms, and the grand jury was a legal grand jury. This being so, in either event the court properly refused to sustain the challenge to the array and the plea in abatement which raised the same question.

2. After arraignment, a panel of forty-eight traverse jurors was put upon the defendants, A. L. Lynn and Alice Lynn, and a list of the names of the forty-eight jurors was furnished them, and the court ordered the striking of the jury from the list so furnished. The defendants objected to the ruling of the court that they strike from the list of forty-eight jurors, and demanded a panel of ninety-six jurors to be furnished them before being compelled to commence their strikes. The defendant assigns error on the refusal of the court to furnish a panel of ninety-six jurors, insisting that as there were two defendants on trial jointly, each defendant was (as the court held), entitled to twenty peremptory strikes; and, as the defendants were jointly indicted and jointly on trial, that they were entitled to a panel of ninety-six jurors from which to commence striking, so that each might have his or her twenty peremptory challenges with knowledge of the personnel of

the entire panel of ninety-six. At common law, the preparation of a list of those liable to be summoned to serve as jurors at a succeeding term of court was unknown. The sheriff, coroner, or officials known as *elisors* had an uncontrolled discretion to summon such "good and lawful men" as they might select, by virtue of a writ of *venire facias*. This practice was said to have led to abuses, mainly in "packing juries," and blackmailing citizens. 1 Thompson on Trials, § 13. To prevent a recurrence of this evil, statutes have been passed in nearly if not all American States, providing for the drawing from the jury-box, previously prepared by officials designated for that purpose under fixed rules, at "a given time before the commencement of any term of court, or at other stated periods, of a list of persons, within the county or other jurisdiction, from whom jurors are to be summoned." Id. Thus our Penal Code, § 862, provides how a jury is impaneled to try a person indicted for a felony: "When any person shall stand indicted for a felony, the court shall have impaneled forty-eight jurors, twenty-four of whom shall be taken from the two panels of petit jurors, from which to select the jury. If the jury can not be made up of said panel of forty-eight, the court shall continue to furnish panels, consisting of such number of jurors as the court, in its discretion, may think proper, until a jury is obtained." And see § 863. The defendant can require no more than the statute grants to him. He is granted a panel of forty-eight jurors, and while two were indicted jointly, each had the right, as did the State, to a severance on the trial, if the election was made. Penal Code, § 995. Had the defendant elected to be separately tried, he would have had a full panel of forty-eight jurors from which to strike. But as he did not elect to sever, but to be tried jointly, it can not be held that he was entitled, as a matter of law, to a panel of ninety-six jurors. It is apparent what such a ruling would lead to, if a number of persons were jointly indicted and all the defendants elected to be jointly tried, and each insisted on the rule contended for here. The defendant is entitled to all that the statute grants to him, and no more, and it grants to him a panel of forty-eight jurors, and the right to sever on the trial. If, therefore, he was furnished a panel of forty-eight jurors, as required by the statute, and he declined to sever on the trial, he has been deprived of no right. See *Cason* v. *State,* 134 *Ga.* 786 (68 S. E. 554).

3. Error is assigned because the court left off the last clause of the following requested charge to the jury: "Before there can be any conviction of murder, either express or implied malice must be shown from the evidence. Where the State proves the killing, a presumption of malice arises; but where the defendant admits the killing with a deadly weapon, but adds an explanation which might negative malice, no presumption would arise that the homicide was murder from such an admission. In other words, where the killing is shown by the admission, and at the same time the admission is made there is an explanation justifying the defendant, it is still necessary, in order for the jury to convict, for the State to prove malice, either express or implied." The charge and refusal to charge could not have injuriously affected the defendant A. L. Lynn. It could only apply to the defendant Alice Lynn, who admitted the killing and sought to justify it, and who was acquitted by the jury. The State did not rely upon any confession of the defendant A. L. Lynn, and therefore he could not be hurt by the charge as given, and the refusal to charge.

4. It was not error to refuse to give the following charge to the jury: "The State is not compelled to show a motive in order to convict of murder, provided either express or implied malice is shown, but there can be no conviction of murder without either the proof of express malice or a presumption from which malice can be implied; for there is no murder without malice, and no malice without motive, and the absence of the proof of motive is a strong circumstance in favor of innocence; and this is especially true where the guilt of the accused is doubtful." *Campbell* v. *State,* 124 *Ga.* 432 (5), 435 (52 S. E. 914).

5. Error is assigned because the court refused to instruct the jury, as requested by the defendant in writing, as follows: "I also charge you that if you believe that the deceased was attempting to have carnal knowledge of Mrs. A. L. Lynn forcibly and against her will, that her husband A. L. Lynn would have been justified in killing the deceased." The court did not err in refusing to charge as requested. There was no evidence to authorize the charge, nor was there any evidence to show that any assault had been made upon the defendant, Mrs. A. L. Lynn, or that her husband, A. L. Lynn, had killed the deceased to prevent an assault being made upon his wife. Her statement, not under oath, that

she killed the defendant could not be taken as evidence in favor of her husband. *Berry* v. *State,* 122 *Ga.* 429 (50 S. E. 345). The defendant's whole defense was based on the theory that he was not present at the killing, and that he took no part in it; he sought to establish an alibi and to prove that at the time of the killing he was at a place other than the scene of the homicide. The court had fully instructed the jury as to the right of the defendant Alice Lynn to protect herself from the assault she claimed was made upon her; but he correctly declined to charge that her husband would have been justified in killing the deceased under these circumstances, or on the theory that it was necessary for him to kill the deceased to prevent the assault from being made.

6. The court did not err in refusing a request to charge the jury as follows: "I charge you, gentlemen of the jury, that the testimony of a detective or person interested in the outcome of the case, or that has any prejudice or bias resting on his mind against the accused, should be scanned with care. A detective or person interested in the outcome of the case is not thereby rendered incompetent from testifying, and no person, no matter how much they are interested or how strongly they are prejudiced or how unworthy they are of belief, and [is?] merely for that reason rendered incompetent as a witness; but their testimony must be admitted, and their truthfulness or untruthfulness is to be determined by the jury." The competency of testimony is for the court to determine, and the weight to be given it and the credibility of the witnesses is exclusively for the determination of the jury. *Calvin* v. *State,* 118 *Ga.* 73, 75 (44 S. E. 848); *Merritt* v. *State,* 107 *Ga.* 675 (4), 681 (34 S. E. 361); *Ryder* v. *State,* 100 *Ga.* 528 (6), 529 (28 S. E. 246, 38 L. R. A. 721, 62 Am. St. R. 334); *Rouse* v. *State,* 135 *Ga.* 227 (69 S. E. 180).

7. The following charge of the court was not erroneous: "The State contends in this case that there was a conspiracy on the part of the defendants, A. L. Lynn and Alice Lynn, to take the life of the deceased F. M. Hightower. It is for you to determine from the evidence whether or not there was a conspiracy. A conspiracy may be defined as a combination or agreement between two or more persons to do an unlawful act. The existence or non-existence of a conspiracy or common intent may be established by proof of acts and conduct, or by proof of express agreement, if any.

It may be proved by circumstantial evidence as well as direct testimony. If you determine there was a conspiracy between two or more persons to do the act alleged in the indictment, then I charge you that any act done in pursuance of that agreement, by any one of the persons to the agreement, is the act of both, if done within the scope of the agreement. If you believe there was a conspiracy and common intent between the defendants to do an unlawful act as charged in this true bill of indictment, then I charge you if one of them, if there was such, did the act alleged in the indictment, that is kill F. M. Hightower, and the other defendant stood by aiding and assisting about the act, then the other would be guilty of the act that the one who struck the fatal blow would be guilty of." It is insisted that this charge was error, because there was no evidence to support or warrant a charge on the question of conspiracy, and that the charge amounted to an expression of opinion on the part of the court that there was a conspiracy between the movant and his wife Alice Lynn. Also, that the charge "raised circumstantial evidence to the same dignity as that of positive evidence." We do not think the charge open to any of the objections urged against it. There was sufficient evidence to warrant a charge on the law of conspiracy, and the fact that the indictment did not in terms charge a conspiracy did not make it erroneous for that reason. Nor is the charge open to the objection that a conspiracy can not be shown by circumstantial evidence. This court has repeatedly ruled that a conspiracy may be shown by such evidence. *Turner* v. *State,* 138 *Ga.* 808, 812 (76 S. E. 349); *Dixon* v. *State,* 116 *Ga.* 186 (42 S. E. 357); *McElroy* v. *State,* 125 *Ga.* 37 (2), 39 (53 S. E. 759); *Weaver* v. *State,* 135 *Ga.* 317 (69 S. E. 488).

8. The defendant and his wife were jointly indicted for murder. On their trial certain evidence of a detective was offered by the State, which tended to show a confession on their part while they were confined in jail. The witness testified to certain conversations between the husband and wife, secured by means of a dictagraph which had been placed in the cell occupied by them. It is insisted that this evidence was inadmissible, because the testimony of the witness showed that he did not hear all of the conversation, and that a part of their conversation would not be admissible unless all of it was heard by the witness. To the objection

thus urged the court did not rule one way or the other, but the testimony was before the jury, and was argued by the attorneys to them. Under the facts the failure of the court to rule upon the objection urged to the admissibility of the evidence was equivalent to overruling the objection. As to the first ground of the objection, that the witness was incompetent to testify unless he heard all of the conversation, this court has held that the fact that a witness did not hear all of a conversation between defendants jointly indicted and about which he is called to testify, "is no ground of objection to his stating so much of it as he did hear." *Westmoreland* v. *State*, 45 *Ga.* 225 (3) ; *Woolfolk* v. *State*, 85 *Ga.* 71 (12), 99 (11 S. E. 814).

9. The following letter was offered in evidence by the State, and evidence was introduced to prove its execution by the defendants jointly: "Dublin, Ga. Dec. 13th 1912. Uncle Frank Hightower Alonzo and the children is planning to go and getting ready to go to Wilks Co next Tuesday, they will be gone three days you dont know how desolate it is out here when me and the baby is left alone. We cant all leave on account of our stock. We have plenty of lightwood ready cut. You can come in your wagon every day and get a load. I will give you a good, good good dinner. Please come visit me in my loneliness. You will never regret the time. Alice Lynn R 6 Dublin, Ga." It was admitted by counsel for the defendants, in open court, that the defendant Alice Lynn wrote a portion of the letter, and owing to her nervous condition her husband, A. L. Lynn, wrote the remainder; but objection was made to its being admitted in evidence on the ground that it was irrelevant and had no bearing one way or the other on the case. We think the letter was admissible as tending to show a conspiracy on the part of Lynn and his wife to have the deceased visit their home for the purpose of murdering him, as contended by the State. This theory was contested by the defendants, and for the purpose indicated it was admissible in evidence.

10. The 16th ground of the motion assigns error because, during the progress of the trial, "and while witnesses were being examined in behalf of the defendant, and, as movant contends, specifically in behalf of himself, that the witness M. H. Blackshear was called to the stand by the defendants for the purpose of proving their good character, but said witness, which witness testified as

follows, witness was asked: 'Q. Do you know Mr. and Mrs. A. L.
Lynn?' A. 'I know Mr. A. L. Lynn.' Q. 'How long have you
known him?' A. 'I have known him seven or eight years.' Q. 'Do
you know his character or general reputation in the neighborhood?'
A. 'I dont think I do; the only knowledge I have of him is personal.'
The court held that said witness had not qualified as a character
witness, and no further questions were then asked said witness
by either side, and he was excused. The following day, after the
defendants had closed their testimony, and the State was offering
testimony in rebuttal, Capt. W. C. Davis, who was examining the
witnesses for the State, stated to the court as follows: 'I desire to
recall Mr. Blackshear for the purpose of examining him on the
cross as the defendant's witness.' This being allowed by the court,
witness was asked the following questions: 'Q. Did you ever hear
Mr. A. L. Lynn threaten to kill Mr. Geo. B. Davis?' This was
objected to by movant, on the ground that the witness had not
qualified as a character witness on the direct examination, and
had not testified to good character on the direct, and that it was
not lawful for any witness who had failed to qualify as a character
witness on the direct to answer specific acts of bad character on
the cross-examination; which objection was overruled by the court,
and the witness answered as follows: A. 'Yes, sir, I have heard
him use words that carried with them a meaning which implied
a threat on his life.' Q. 'Why did he do it?' A. 'I presume it was
because he was very angry.' Q. 'What had Mr. Davis done to him?'
A. 'It was in connection with a suit that Mr. Davis had brought
for Mr. Lynn's brother against A. L. Lynn.'" The defendant
objected to this testimony going to the jury, and excepted to the
ruling of the court overruling the objection. We understand the
general rule to be that where the defendant's character is put in
evidence, and a witness for the defendant has testified on direct
examination as to the defendant's general good character, he may,
on cross-examination, be questioned as to specific acts of bad char-
acter or of violence on the part of the defendant. Did the testi-
mony in this case come up to this rule? On direct examination
the witness answered, as to his knowledge of the general reputa-
tion of the defendant in the neighborhood, "I don't think I do;
the only knowledge I have of him is personal." We think the court
correctly held that the witness was not qualified as a character

witness. But the serious question arises when the witness, who was put back on the stand by the State, to be cross-examined, testified: "I have heard him [the defendant] use words that carried with them, a meaning which implied a threat on his [Geo. B. Davis's] life." Do these words mean that the accused was a man of violent character? Can the question be asked on cross-examination, and the answer be admitted as not in violation of the rule as to proof of violent character on the part of the defendant, who had voluntarily put his character in issue by other witnesses? And did the question and answer so prejudice the defendant before the jury as to require a new trial? There have been cases in which it was held that where there was ample competent evidence to support the verdict, a new trial would not be granted, notwithstanding evidence had been erroneously admitted to the jury. *Luby* v. *State,* 102 *Ga.* 633, 646 (29 S. E. 494). The defendant had put his good character in issue. Such issue is one of substantive fact, and the jury will consider and weigh the evidence on that question in connection with all the other evidence, in arriving at their verdict. Good character of the accused is not a substantive defense, but may be considered by the jury and may of itself raise a doubt in their minds as to his guilt. See *Scott* v. *State,* 137 *Ga.* 337 (73 S. E. 575). We think it was error to allow the witness to answer the question propounded as to specific threats of violence; and while the answer is not a direct statement of a threatened act of violence on the part of the accused, it might be equivalent to that. But we do not think the evidence could have been prejudicial to the defendant, under the facts of this case. The person said to have been threatened by the defendant was, according to the record, Mr. George B. Davis, who was of counsel for the defendant in this case, and who examined the witnesses for him. If the language objected to amounted to a threat on the life of Mr. Davis (and we doubt it), it made little impression on the witness Blackshear; for he testified further, "If I had thought he was going to kill you, Mr. Davis, I would have told you." If the language of the defendant testified to, therefore, made no impression on the mind of the witness who heard it that it amounted to a threat to take the life of Mr. Davis, it can hardly be supposed that it would impress the jury that it was a threat to take Mr. Davis's life, or would impress them with the idea that the defendant was such a

violent man as that he would likely commit a homicide without sufficient provocation. It will be observed that the witness did not testify that the defendant was a man of violent character. He merely said that he had heard him use words which carried a meaning that *implied* a threat on the life of the person alleged to have been threatened. We can not conceive that a jury of average intelligence would be influenced by language so hedged about as to convey only the idea that a threat was implied. The language itself was not given. Surely no jury trying one for his life would convict merely because of this testimony. And while we think that the admission of the evidence was erroneous, we can not say it was sufficiently so to require a new trial, especially in view of the fact that the jury knew that the "implied" threat was with reference to one of defendant's own counsel. *Elliott* v. *State,* 132 *Ga.* 758 (64 S. E. 1090) ; *Strickland* v. *State,* 137 *Ga.* 115, (5a) 116 (72 S. E. 922) ; *Chestnut* v. *State,* 112 *Ga.* 366 (37 S. E. 384).

11. The evidence was sufficient to support the verdict; and none of the assignments of error are such as to require the grant of a new trial.

*Judgment affirmed. All the Justices concur, Beck and Atkinson, JJ., specially.*