### 14172.  ELLIS *v*. THE STATE.

1. The verdict of voluntary manslaughter was supported by the evidence.
2. The ground of the motion for a new trial, complaining of the admission of documentary evidence, cannot be considered, as the evidence was not set forth in the ground nor attached thereto as an exhibit.
3. The statement of the defendant authorized the charge on voluntary manslaughter.

DECIDED APRIL 11, 1923.

Indictment for murder; from DeKalb superior court — Judge Hutcheson. December 4, 1922.

*Branch & Howard, J. D. Kilpatrick,* for plaintiff in error.
*Alonzo M. Brand, solicitor-general,* contra.

BLOODWORTH, J. Only the 3d headnote needs to be enlarged upon. There were no eye-witnesses to this homicide. The State having proved that the death was caused by a gunshot wound, and the accused having admitted to the sheriff, without any accompanying explanation that would justify the killing, that he shot the deceased, a prima facie case of murder was made out. In his statement to the jury the accused admitted shooting the deceased, and sought to show that he was justified in so doing. He stated that he was cultivating the land of the deceased " on halves," that on the morning of the homicide he had gone to the residence of the deceased to see him about hauling certain vegetables to market, and that when he told deceased that he had " come for some baskets to gather in," the deceased said, " I am not going to furnish you another God damned thing;" that the deceased cursed

him and put his hand on a double-tree which was "hanging there;" that he kept backing from the deceased, and, as quick as he could, went down the road; and that the deceased followed him to an okra patch that he was cultivating and continued to curse him. He further testified: The deceased "advanced on me and I went to backing, and he came to this thing (indicating), and he picked it up and he said, ' You are a God damned lying son of a bitch; I am going to knock your brains out;' and he had it in this position, and he drew it back like he was going to throw it at me, and my gun was setting there at the crib. I had been after a hawk that morning, and I happened to leave the gun standing at the crib, and I reached and got my gun, and I was holding it in my hand in this position, and I went to backing, and I made several steps backward, and he still come on me, and he said, ' I am not scared of any damned man I ever looked in the face of.' I said, ' That's all right, Mr. Chamblee, let's don't have any trouble, please stop.' I said, ' Let's don't have any trouble over a little thing like this.' He kept coming on and I fired the first time to the right of him. I though perhaps I would stop him, and instead of him stopping he kept coming on, and just as quick as I could I loaded my gun and fired that' second shot, and he stopped. He had his hands up sorter in this position [indicating], and I was backing, and when I shot he just went back three or four steps, and he never did speak any more, and he staggered off back, several steps back, and staggered off in the ditch and fell."

Under the law the jury had a right to believe all of this statement, any part of it, or none of it. Even if believed in its entirety, it shows an actual assault on the accused by the deceased, and there is absolutely no proof that the weapon with which the accused says the deceased made the assault on him, and which he named as "this thing" (and which, from the evidence, we are authorized to conclude was a harrow tooth), was one likely to produce death; nothing to show its size or weight (nor was it, so far as the record shows, introduced in evidence) ; nothing to show that the alleged assault was of such a nature as to warrant the conclusion that a felony was about to be committed on the accused. If the accused shot because of a bare assault upon him and not to prevent a felony, the offense was voluntary manslaughter. In *Moran* v.

*State,* 120 *Ga.* 847 (48 S. E. 325), the Supreme Court said: " This testimony as to an actual assault upon the defendant warranted the court in giving the jury instructions on the subject of voluntary manslaughter. *Horton* v. *State,* 120 *Ga.* 307. It was for the jury to say whether, considering the size of the stick, the circumstances of the assault were sufficient to arouse the fears of a reasonable man, or only to justify the excitement of such passion as would reduce what would otherwise have been murder to manslaughter." In *Cain* v. *State,* 7 *Ga. App.* 24 (65 S. E. 1069), this court, citing a number of cases, said: " It is well settled by repeated rulings of the Supreme Court and this court that on a trial for murder, if there is anything deducible from the evidence or the defendant's statement that would tend to show manslaughter, voluntary or involuntary, it is the duty of the court to instruct the jury fully on the law of manslaughter." In that case it was also said: " Two witnesses for the defense gave a different account of the homicide. They swore that as soon as the two came out of the hotel, the defendant began to reproach the deceased for treating him badly; that the deceased in response cursed the defendant, reached out his hand to take hold of him, and attempted to get his pistol or his club, but for some reason did not succeed in doing so before he was shot. The evidence showed that there was an actual assault by the deceased upon the accused, and tended to show that this actual assault was followed by an effort to draw a deadly weapon. It was therefore for the jury to say, under these circumstances, whether the assault was sufficient to arouse the fears of a reasonable man and justify the killing, or was sufficient provocation to justify the excitement of passion and to reduce the killing to voluntary manslaughter. A charge on the law of voluntary manslaughter was demanded by the issue raised by this evidence. *Hatcher* v. *State,* 116 *Ga.* 619 (42 S. E. 1018) ; *Moran* v. *State,* 120 *Ga.* 846 (48 S. E. 324)." In *Chestnut* v. *State,* 112 *Ga.* 366 (37 S. E. 384), the record shows that the accused met the deceased at the place where the homicide occurred, and that the latter said: " There is the damned rascal now; I will settle with him," and that the accused said: " I ran backward until I got my pistol out. He was coming on me all the time with a knife or *something* in his hand, and I thought it was that dirk and I shot him." In discussing that case the Supreme Court said (pp.

371, 372): "Where one kills another to prevent a mere assault, the slayer is guilty, under our law, of voluntary manslaughter. Under this statement of the accused, whether the deceased in fact had in his hand a deadly weapon when he advanced upon the accused is left in doubt. If he did have a deadly weapon and advanced upon the accused with a threat, and the circumstances indicated a present intention to use the same, then the jury might well have found that the accused entertained the fears of a reasonable man that the deceased intended to commit a felony upon him. But if in fact the deceased did not have a deadly weapon when he advanced, then the jury might well have found that the alleged fear was not reasonable or well founded, or that no such fear really existed at all; and in either of these events the homicide was not justifiable. So that the question whether the deceased was armed with a deadly weapon or not, at the time the accused says that he advanced upon him, becomes material. The manner of the advance, as well as the weapon with which the deceased was armed, would be circumstances which indicated his intention; and if in fact he had no weapon at the time and there was no such fear, or, if there was, there were no reasonable circumstances to authorize it, then, while the advance might well have been considered the equivalent of an assault, it could not have been more; and if an assault, then the slaying of the deceased to prevent that assault would have been voluntary manslaughter. So that, under the statement of the accused himself, it was left in doubt whether or not, at the time the deceased advanced upon him, the accused shot him to prevent the commission of a felony or to repel a bare assault; and even under the statement, it was proper for the judge to instruct the jury, and he did, the law in relation to justifiable homicide under the fears of a reasonable man that a felony was about to be committed on his person; and in view of the other contigency, that is, that it was not a dirk or other weapon which the deceased had in his hand, it could not have been error for the judge to instruct the jury as to the law of voluntary manslaughter, so that they might grade the homicide according to their belief, from the evidence and the statement, whether the killing was done under reasonable fears, to prevent the commission of a felony, or to repel an assault. This is what he did, and in doing so, in our judgment, he committed

no error." See also *Hatcher* v. *State,* 116 *Ga.* 617 (1), 619 (1) (42 S. E. 1018), and *Jones* v. *State,* 125 *Ga.* 254 (54 S. E. 144).

*Judgment affirmed. Broyles, C. J., concurs. Luke, J., dissents.*

LUKE, J., dissenting. I do not agree to the judgment of affirmance in this case for the reason that, in my opinion, under no view of the evidence was the crime of manslaughter involved. There was no eye-witness to the killing, and the State depended for a conviction upon the admissions of the defendant. In my opinion, the statement of the defendant justified the killing. Under his statement he was not engaged in a quarrel, was not wanting a quarrel or a fight, and was doing everything in his power to get away from the deceased, who pursued him with a threat that he would "brain him" with a double-tree which he held in his hand.