## 53517. BROOKS v. THE STATE.

WEBB, Judge.

Edward B. Brooks, an Atlanta attorney, was found guilty on May 7, 1976 of criminal attempt to commit theft by extortion, and sentenced to serve one year in prison.[1] His amended motion for new trial was denied on November 29, 1976, and within due time he filed his notice of appeal. The indictment charged that Brooks threatened Leroy Johnson that unless Johnson "paid accused one per cent of ten million dollars, five thousand dollars to be paid at once and the balance within three to four years, accused could and would withhold accused's testimony and information with respect to the legal claim and defense" of Johnson and others to a motion for default judgment in a civil case against Johnson and others then pending in the Superior Court of Fulton County.

Johnson, a former state senator, was the principal witness at the trial of Brooks. He testified that he was an attorney[2] with offices at 1014 Gordon St., S. W., in Atlanta; that he had a financial interest in Atlanta Internationale Hotel which was owned by National Hotel Acquisitions, Inc.; in September, 1975, Alphonso Dawson, one of the owners of the hotel, sued the corporation and the remaining seven owners, but that he, Johnson, was never served; and that Ed Marger, attorney of record for Dawson, notified him that a motion for default judgment had been filed, claiming that no answer to Dawson's suit had been made within the prescribed 45-day period.

---

[1] Following conviction the trial court ordered that Brooks be suspended from the practice of law.

[2] In an unrelated matter, Johnson's petition for voluntary withdrawal from the practice of law was accepted by the Superior Court of Fulton County on October 19, 1976. (State Disciplinary Board Notice No. 53).

Depositions were taken but the motion was never granted. That civil suit was dismissed April 27, 1976.

Johnson testified that he had known Brooks professionally but was unaware that Brooks was in any way connected with Dawson's civil suit, and had had no contact with Brooks about the Dawson suit prior to Saturday, February 21, 1976. So far as Johnson knew, Ed Marger was the only attorney of record for Dawson. Johnson said that on that date Brooks telephoned him at the hotel about 9 p.m. and said he wanted to talk "about the Alphonso Dawson suit against the hotel," that "it was something extremely important that he wanted to talk to me about . . . so I told him he could meet me at the hotel. He said, 'No, I want to meet you on neutral grounds.' I said, 'Bob, it's no point in my meeting you on neutral grounds, we are not adversaries, why should I do that?' "

It was finally agreed that the two would meet at 10 that evening at Johnson's law office after Brooks refused to meet elsewhere. Johnson was suspicious and carried in an inside coat pocket a Lanier tape recorder. Brooks arrived first; they entered Johnson's office, but Brooks refused to go in Johnson's private office, insisting on the library. After the two were seated, Brooks, in response to Johnson's question as to what he wanted, said: "The lawsuit that Al Dawson has against you, you are in deep trouble with it, that you have failed to answer it and the case is locked up, and I'm the only one who can help you out of it." Johnson testified further that he excused himself, went to the bathroom and activated the recorder because he felt that Brooks "was going down a path which I felt he would try to compromise my position on the lawsuit, or to make an offer to me which I considered to be an illegal offer." Johnson stated that Brooks said "that he should not probably be talking to me about this case, that he would no doubt be treading on dangerous ground, that he could get in serious trouble by talking to me about it, and that I may be wired or the room may be wired, or something to that effect, and that's the reason he wanted to meet me on neutral ground. And then he said, 'I have this whole case locked, the whole case is locked up because you did not answer the lawsuit.' And he said that he had checked out the papers in the Clerk's office and that the

lawyer for the plaintiff had called him and asked him to give him an affidavit, that is, Al Dawson's lawyer had called him and asked him to give him an affidavit stating that he had checked the papers out 56 days after the suit was filed. He said, 'I don't have to give him that affidavit because he may not remember how many days I said,' and he said, 'The whole case I realize depends on me because I can give you an affidavit saying that I checked the case out, the papers out 36 days after the suit was filed . . . If I testify or give an affidavit that I checked those papers out 36 days after this suit was filed, then it would be to your advantage.' He stated that he could testify either way; either check them out 56 days after the suit was filed or 36 days after the suit was filed. Now, what he was saying was simply the fact that if he said that he checked the papers out 36 days after the suit was filed, then that was a difference between 36 and 45 days, which was nine days and we had an opportunity to review the file and make whatever answer that was necessary to be made."

Brooks told Johnson that for a favorable affidavit he wanted "one per cent of ten million dollars, over a two or three year period, with a substantial amount up front." Johnson told him that he would get in touch with Jackson Cook to find out when the motion was coming up, and would contact Brooks on Monday. After Brooks left Johnson communicated with one of the other owners of the hotel, Marvin Arrington, and related what had happened. Johnson took the tape to the Fulton County district attorney's office on Monday where he turned the tape over to Huley Bailey, an investigator with that office.

Johnson contacted Brooks Monday night, they set up a meeting for Tuesday, February 23, and on that date met in Johnson's library. Johnson's recorder was in his pocket, turned on. He told Brooks that he was not able to raise the kind of money Brooks wanted, $100,000. Brooks then said, "Well five up front will do me." Johnson: "What do you mean, five thousand dollars?" And Brooks said, "Yes, $5,000 up front. . . I will give you an affidavit stating that I took the papers out on a certain day, 36 days." When asked what would happen if Johnson were unable to raise the money, Brooks replied: "Well, let me tell you that I

don't have any love for you. . . I don't have any loyalty to the other side. I'm looking after myself. . ." The tape of this second conversation was delivered the next day to Mr. Bailey in the office of Assistant District Attorney Carter Goode.

Bailey testified that he was a special agent of the intelligence division of the district attorney's office; that the two tapes were turned over to him by Johnson, one on February 23 and the other on the 24th; that he made copies of both tapes, that transcriptions of both tapes were made; that subsequent to the earlier transcription he was again making a transcription of the first tape and some twelve words were erased, when he inadvertently hit the record button, and the recorder "picked up the sound of the typewriter in the background;" that he had had the original tape transcribed prior to the occurrence of this erasure; that both the transcript and the copy of tape 1 contained the words subsequently erased; and that the contents of the two original tapes were truly and accurately reflected by the transcriptions. Bailey further testified that he knew both Brooks and Johnson and knew their voices; and that when tape 1 was received in the district attorney's office it was replayed in the presence of himself, Johnson, Arrington, District Attorney Slaton, assistants Carter Goode and Jack Mallard. He testified that since delivery to him the two original recordings had not been altered or changed other than the inadvertent erasure on tape 1.

The two tapes were played to the jury with the jury having transcripts as an aid to their hearing. The original tapes were admitted into evidence, and the transcripts were furnished to the jury as an aid in listening to the tapes and not as evidence.

Brooks offered as an expert witness in his defense Frank G. Smith, an associate in the same law firm with which Brooks was associated, who said that he was retired from the Federal Aviation Agency where he had been a supervisor electronic technician and was certified in the maintenance of recording devices for some 15 years. Attorney Smith testified that he had examined copies of the tapes supplied to him, that he had no opportunity to examine the originals and had heard the originals only

while being played to the jury, that in his opinion the originals had numerous pauses and two significant blips, and that he noticed differences in at least 29 places between the transcripts and the copies.

The accused testified in his own defense that tape 1 did not contain all of the conversation between Johnson and himself on the occasion, said that it was Johnson who called and arranged the meeting, and claimed that the five thousand dollar figure was "what I would take in order to represent" Johnson in the civil litigation, that he never made any promises or threats. He admitted that it was his voice on tape 1 saying, "That's why I wanted to meet you on neutral grounds." He further denied that there was anything improper in his words recorded on tape 1, "So I know I'm treading on dangerous grounds when I even talk to you about this." He admitted under cross examination that the person speaking to Johnson as produced by the tape player was he, and that the words were his.

Prior to trial Brooks filed a motion for a bill of particulars, a plea in abatement, a motion for discovery, a demurrer to the indictment, a motion for complete recordation of all proceedings, a motion to suppress, a motion for inspection and validation of authenticity of tape recording, and an amended motion to suppress. These were overruled. Also, the trial court overruled the accused's motion for an in camera hearing as to the admissibility of the tape recordings and as to the authenticity and validity of the original tape, and an inspection of the tape. The court also overruled and denied accused's motion to exclude the tapes.

The accused on his appeal enumerates seventeen alleged errors, all considered herein but not necessarily in the order presented by him.

## A. Pre-trial Motions

1. Brooks asserts as error (No. 5) the overruling of his demurrer that the indictment "fails to set forth any acts alleged to have been committed by him which constitutes an offense against the laws of the State of Georgia." An indictment is sufficiently technical and correct if it states the offense in the terms and language of the statute or so plainly that the jury may easily

understand the nature of the offense charged. Code Ann. § 27-701. If the accused can admit all accusations of the indictment and still be innocent of the offense charged, the indictment is defective. *Gore v. State,* 79 Ga. App. 696, 704 (1) (54 SE2d 669) (1949). The indictment here follows Code Ann. § 26-1001 (criminal attempt) and § 26-1804 (a) (6) (theft by extortion) with this exception: instead of alleging language from the criminal attempt statute, the state set forth the overt acts in such detail and so plainly that they could easily be understood by a jury. The crime was described with sufficient definitives to inform both the accused and the jury of the charges against him. *Chenault v. State,* 234 Ga. 216, 222 (6) (215 SE2d 223) (1975); *Orkin v. State,* 236 Ga. 176, 178 (223 SE2d 61) (1976).

The trial court correctly overruled the demurrer.

2. The accused charges the trial court with error in overruling his plea in abatement (enumeration No. 6), but he has offered no argument or citation of authority. This enumeration is considered abandoned under Rule 18 (c)(2) of this court's rules (Code Ann. § 24-3618 (c, 2)). *First Nat. Bank &c. Co. v. McNatt,* 141 Ga. App. 6, 9 (4) (232 SE2d 356) (1977).

3. There is no merit in the contention that error resulted by an overruling of the accused's motion for a bill of particulars (No. 3). The "bill of particulars" is a pleading not used in Georgia. *Smith v. State,* 139 Ga. App. 515, 519 (4) (228 SE2d 705) (1976). Even so, however, it appears from a review of the transcript that every request in the bill of particulars was met by the state.

4. Brooks charged the trial court with error because his motion for discovery was overruled (No. 4). No statutory authority for discovery in criminal cases exists in Georgia, as was asserted in *Thornton v. State,* 139 Ga. App. 483 (228 SE2d 919) (1976) but we nonetheless recognize that due process requires that there be no suppression by the state of evidence in its files which may be favorable to the accused. Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). Brady does not require, however, the prosecution to open its file for general inspection by the defense or for pre-trial discovery. *Hicks v. State,* 232 Ga. 393, 396 (207 SE2d 30)

(1974). The accused was furnished copies of the tapes in advance of the trial. At the hearing on the motion to suppress held on April 27, counsel for Brooks stated that the state "has complied with all the requirements. . ." Counsel for the accused made no showing that the original tapes contained exculpatory material or any material favorable to him. Furthermore, although he contends he was denied access to the original tapes, at the hearing on April 27 counsel stated: "We heard the tape and the copy that we have was pretty poor. . . But it was sufficient for you to hear. . ." State's prosecutor asserted on the first day of the trial, in response to the complaint of the accused's counsel that the original tapes had not been furnished as requested, that when he first provided accused's counsel with copies of the tapes, "he has been advised that the originals were in the office and that they could be listened to by him if he wanted them. And he has yet to avail themselves of that listening to the tape." Accused has not shown that access was denied, and not having shown that the original tapes contained exculpatory material, he had no right of access prior to trial. *Quaid v. State,* 132 Ga. App. 478, 489 (8) (208 SE2d 336) (1974); *Godwin v. State,* 133 Ga. App. 397, 398 (211 SE2d 7) (1974). See also *Maddox v. State,* 136 Ga. App. 370, 372 (6) (221 SE2d 231) (1975). An accused may utilize the notice to produce provision of Code Ann. § 38-801 (g) to compel the production of tangible objects and documents *at trial.* *Brown v. State,* 238 Ga. 98, 100 (231 SE2d 65) (1976). Here, however, the tapes were available to the accused at trial and were introduced as evidence. Pursuant to accused's several motions the trial court did hear the tapes in chambers and found no evidence therein favorable to the accused within the proscription of Brady, supra. The accused "has the burden of showing how his case has been materially prejudiced, even when the trial court declines to make an in camera inspection." *Hicks v. State,* supra, p. 396. He failed to show any prejudice, and we find no error in the overruling of accused's motion for discovery.

5. The accused says there was error in the overruling of his motion to allow his "expert specialist to examine the tapes." (No. 10). This motion was filed on Wednesday,

April 28, 1976, and heard on the following Tuesday, May 4, the first day of the trial. The trial judge sustained the state's objection, ruling that the accused's motion was untimely and too late.

The record indicates that copies of the tapes had been provided to accused's trial counsel well in advance of trial. His affidavit which accompanied the motion showed that he had listened to the tape recordings. Furthermore, trial counsel for the accused had been offered the opportunity to listen to the original tapes in the district attorney's office, but he did not elect to do so. The trial judge did suggest that the accused's expert, who was an attorney associated in the same law firm with the accused, be present in the courtroom when the recordings were played. There is no indication that Brooks had any further objection following this suggestion, the attorney expert heard the original tapes in the courtroom, and testified.

We agree with the able trial judge's ruling. One charged with possession of a contraband substance, and whose conviction or acquittal is dependent upon the identification of the substance as contraband, under due process does have a general right to have an expert of his own choosing analyse the substance independently. But he "does not have an absolute, unqualified right to examine such evidence. The motion for an independent examination must be timely made. . . The trial . . . was delayed approximately three years from the date the defendant was indicted. . . Defendant's motion for an independent examination was not made until three months before trial. Under these circumstances, it is our opinion that the motion was not timely and, therefore, the order of the trial court denying the motion was correctly affirmed by the Court of Appeals." *Patterson v. State,* 238 Ga. 204, 206 (1977). Furthermore, as hereinabove stated, the accused not having shown that the original tapes were materially favorable to him, it was not error to refuse him access prior to trial. *Quaid v. State,* 132 Ga. App. 478, 489 (8), supra.

6. Brooks claimed error in the overruling of his "motion for complete recordation of all proceedings." (No. 7). He suggests that he was prejudiced by the court's hearing of the tapes and reading of the transcripts outside

of his presence and his counsel. At the suppression hearing, however, counsel for Brooks said "[W]e feel that the only way the court can really rule on what we are moving into now is to listen to the tape itself. . . I don't think the court has to hear it while we are sitting here, you can hear it any convenient time." The trial judge did listen to the tapes, stating at the beginning of the trial when counsel renewed some motions: "After the discussion we had last Wednesday in Chambers pursuant to it, I listened to the tapes all last Friday, I did not recall nor do I believe that we made any arrangements that we would have all of the parties present, and so forth, at that time. I listened to the tapes, I would simply say that I did listen to those tapes with Mr. Bailey and Mr. Mallard present, and there was no real discussion about the tape because it was done for my benefit, I listened to the tapes, and I listened to them as I read along the transcript of them. Now, do I understand that it is your position those tapes ought to be listened to again in the presence of counsel?" The accused did not then claim error or make any objection to the trial court's recollection.

Furthermore, there is nothing to indicate any instance when the accused specifically asked the trial court to have something recorded and was refused. He does not now direct our attention to any matter taken up off the record which was prejudicial to him. No objection was made at any time during the trial to any failure of the court reporter to record all conferences at the bench. We find no merit in this enumeration.

7. Another alleged error is that the court below erred in overruling the accused's motion for leave to file further motions (No. 9). He also charged that the state committed error by placing his character in issue (No. 13). To neither of these has he presented any argument or citation of authority. They are considered abandoned under Rule 18 (c)(2), supra; nor is there any merit in either enumeration.

B. Trial Issues

8. Enumerations of error 2, 11, 12 and 16 all relate to the tapes. These are "the meat in the coconut." The accused contends that the court erred in overruling his motion to suppress (No. 2), in admitting the testimony of Bailey as an expert witness (No. 11), in ruling that the

chain of custody of the tapes had been established (No. 12), and in admitting the tapes (No. 16).

(a) A principal argument of the accused is that the tapes were erroneously admitted because the state failed to lay a proper foundation. The trial court held a hearing outside the jury's presence to determine the admissibility of the tapes, and overruled Brooks' motion to suppress. Essentially the same evidence was presented during the trial that was offered during the suppression hearing to exemplify a foundation for admission of the tapes as evidence. This court, in *Solomon, Inc. v. Edgar,* 92 Ga. App. 207, 211 (3) (88 SE2d 167) (1955), held that a proper foundation for use of tapes must be laid as follows: "(1) It must be shown that the mechanical transcription device was capable of taking testimony. (2) It must be shown that the operator of the device was competent to operate it. (3) The authenticity and correctness of the recording must be established. (4) It must be shown that changes, additions, or deletions have not been made. (5) The manner of the preservation of the record must be shown. (6) Speakers must be identified. (7) It must be shown that the testimony elicited was freely and voluntarily made, without any kind of duress." The accused makes no contention that the operator was not competent to do so, but he argues that a screw on the device was replaced while it was in the district attorney's office, the authenticity and correctness of the recording were not shown, deletions were made which should have made the tapes "per se excludable," the manner of preservation was not shown, the speakers were not properly identified, and there was no showing of voluntariness.

Johnson identified the accused in court, and testified that he had known him since high school and as a fellow attorney. Brooks admitted that it was his voice on the tapes, that the person speaking to Johnson as produced by the tape player was he, and that the words were his. Johnson used the machine in his law office, and it was operable. He identified the cassette tapes offered in evidence as recordings of his conversations with Brooks. He testified that there were no changes while the tapes were in his possession. The only deletion was as testified by Bailey when he inadvertently pressed the record

button when a transcription was being made, but both a reproduced recording and a transcript had been previously made. Johnson testified there were no differences between the tapes played in court and the conversations he had with Brooks.

Secondary evidence may be used when there has been a satisfactory accounting for the absence of the primary evidence. Code Ann. § 38-212; *Carpenter v. State,* 140 Ga. App. 368, 369 (1, a) (231 SE2d 97) (1976). The keeping and preservation of the tapes was adequately shown by testimony of Bailey, the investigator from the district attorney's office. There was absolutely nothing to indicate that Brooks' statements were not voluntary and of his own choosing. He was not forced or in any way coerced to make them when he met Johnson on the two occasions of the tape recordings. We conclude that the foundations for admission of the tapes laid down in the *Solomon* case were adequately met.

(b) Brooks further insists that the tapes were improperly admitted because they are violative of both state and federal law. We are not so persuaded.

Code Ann. § 26-3001 in effect at the time of the recorded conversations provides: "It shall be unlawful for: (a) any person in a clandestine manner to intentionally . . . record the private conversation of another which shall originate in a private place. . ." Section 26-3006 further provides: "Nothing in section 26-3001 shall prohibit the interception, recording and divulging of a message . . . in those instances wherein the message shall be initiated or instigated by a person and the message shall constitute the commission of a crime or is directly in the furtherance of a crime, provided at least one party thereto shall consent."

The one-party consent provision of Code § 26-3006 is applicable to face-to-face oral communication. *Humphrey v. State,* 231 Ga. 855, 862 (204 SE2d 603) (1974), cert. den. 419 U. S. 839 (1975); *Orkin v. State,* 236 Ga. 176, supra, p. 182. The conversations recorded here were "in furtherance of a crime" and as the recording and the divulgence were done with the consent of one of the parties, the tapes may be used as evidence, their authenticity having been proved. *Humphrey v. State,*

supra, p. 863; *Cross v. State,* 128 Ga. App. 837, 841 (198 SE2d 338) (1973).

Federal law is much more liberal than is our state law and is inapplicable. *Cross v. State,* supra, p. 842; *State v. Guhl,* 140 Ga. App. 23, 27 (230 SE2d 22) (1976), cert. den. We do not find the tapes to be violative of either state or federal law.

(c) We find no merit in the contention that the chain of custody of tapes was not established. The facts show otherwise. "In proving chain of custody, the state is not required to show that the substance was personally guarded each minute it is in one's custody, and in the absence of a showing to the contrary, the chain of custody is not thereby broken. . . In the absence of evidence of tampering with the substance, the chain of custody has not been shown to be broken." *Davis v. State,* 135 Ga. App. 203, 204 (1) (217 SE2d 343) (1975); *Norwood v. State,* 238 Ga. 199 (2) (1977). See *Ramey v. State,* 238 Ga. 111, 113 (4) (230 SE2d 891) (1976). The evidence was sufficient to show that there had not been a substitution, alteration or tampering with the tapes and the recorder. *Lentile v. State,* 136 Ga. App. 611, 615 (2) (222 SE2d 86) (1975).

(d) Contrary to appellant's assertion, we do not find that Bailey's testimony was admitted as that of an expert. In fact, on cross examination in answer to the question, "You would not consider yourself an expert on transcriptions and recording of tapes and that sort of thing, would you?" he replied "No, sir." He had given his background only to demonstrate that he knew how to operate tape recorders. Even the accused's trial counsel had stipulated "that Mr. Bailey is a qualified police officer and very experienced, and we have known him for many years." There is no merit in Enumeration 11.

9. The accused contends error was committed by the trial court in admitting the transcripts into evidence (No. 14). The admission of a transcript of a tape recording is permissible when a proper foundation has been laid. *Estes v. State,* 232 Ga. 703, 709 (4, b) (208 SE2d 806) (1974). Proper foundation had been laid ( *Solomon, Inc. v. Edgar,* 92 Ga. App. 207 (3), supra). The transcripts were admitted for use by the jurors during the playing of the tapes so that they could more easily follow what was being said and

who was speaking. The only question could be whether the transcripts accurately reflected what was recorded on the tapes. The trial judge himself had listened to the tapes, using the transcript offered to the jury as he listened, and he stated to counsel outside the jury's presence: "I feel that they were accurate transcriptions of what I at least heard of those tapes." See Fountain v. United States, 384 F2d 624, 632 (5th Cir. 1967).

10. Was there error, as Brooks asserts, by the trial court in failing to charge on entrapment without request? (No. 15).

"[T]o raise the defense of entrapment a defendant must admit the commission of the crime; but that he did so because of the unlawful solicitation or inducement of a law enforcement agent." Carter v. State, 140 Ga. App. 208 (1) (230 SE2d 357) (1976); Code Ann. § 26-905. There was no admission of the crime by Brooks, and Johnson was not a law enforcement agent. Brooks presented no entrapment defense. Thomas v. State, 134 Ga. App. 18, 23 (213 SE2d 129) (1975), cert. den.

"The defendant who interposes an entrapment defense may not controvert the allegations of the indictment. . . In asserting an entrapment defense, . . . [the] accused admits the commission of the offense while denying that he was inclined to commit the offense before the intervention of the law enforcement agent. The accused must choose, therefore, where the evidence may present a case of entrapment, whether to assert the entrapment defense, thereby admitting the other elements of the crime." Reed v. State, 130 Ga. App. 659, 661 (204 SE2d 335) (1974); Garrett v. State, 133 Ga. App. 564, 567 (4) (211 SE2d 584) (1974), U. S. cert. den., 423 U. S. 846.

When trial counsel were asked by the court after the charge if there were any exceptions, accused's counsel named several but made no mention of entrapment, and said "I believe that's all we have of the exceptions." Error induced by counsel is not reversible. Hill v. State, 237 Ga. 523, 525 (3) (228 SE2d 898) (1976).

"Strong tactical considerations would militate in favor of delaying the raising of the claim in hopes of an acquittal, with the thought that if those hopes did not

materialize, the claim could be used to upset an otherwise valid conviction at a time where reprosecution might well be difficult." Davis v. United States, 411 U. S. 233, 241 (93 SC 1577, 36 LE2d 216) (1973).

11. Brooks says the trial judge complimented Johnson, the state's witness, and thereby committed error (No. 17). The alleged compliment was a reference to the witness as a "fine attorney." We look at it differently. The state's attorney asked Johnson, "Well, would you tell us of the circumstances surrounding your meeting Bob Brooks?" The accused's attorney objected as soliciting hearsay, the state's attorney rejoined, and the trial judge ruled: "I will admit the question. I'm sure that technically in a case where the witness himself is a fine attorney, he would not want to transgress the rules of evidence. Proceed." This seems to us to be no more than an admonition that as an attorney he would be expected to conform to the rules of evidence in giving his testimony. The following judicial remarks were not considered impermissible: "The only thing that the court wants is I want to be sure you understand your testimony and that you testified what the truth is, and I am sure you will." *De Freese v. State,* 232 Ga. 739, 744 (9) (208 SE2d 832) (1974); " 'He is presumed to speak the truth and that is an improper remark. Don't make it again.' " *Strong v. State,* 232 Ga. 294, 301 (206 SE2d 461) (1974); " 'He has a right to search him on cross examination, specially where the witness might hesitate to answer. I will let him do that.' " *Morgan v. State,* 229 Ga. 532, 534 (3) (192 SE2d 338) (1972); " 'I rule that fishing is not bad, that a man has not got a bad character that fishes. I rule that now.' " *Williams v. State,* 42 Ga. App. 225, 227 (3) (155 SE 511) (1930).

There is nothing to this alleged error. Nor did the accused's trial counsel make objection or move for a mistrial. *Almond v. State,* 128 Ga. App. 758 (1) (197 SE2d 836) (1973). "Prejudicial remarks of the judge in the presence and hearing of the jury on the trial of a criminal case are not cause for a new trial when there was no motion for a mistrial on account of them." *Davis v. State,* 40 Ga. App. 123 (4) (149 SE 51) (1929).

Additionally, the trial court instructed the jury that "you are the exclusive judges of the credibility of the

witnesses and the weight which you shall give their testimony and the evidence in the case." See *Morgan v. State,* supra, p. 535.

### C. Post Trial Motions

12. The accused enumerates error in the denial of his motion for new trial on the grounds that (a) the evidence was insufficient to support the verdict, (b) the verdict was contrary to law and the principles of equity, and (c) the verdict is decidedly and strongly against the weight of the evidence (No. 1). To this he added that the court erred in entering its judgment of guilt "since the *allegata* did not equal the *probata*."[3] (No. 8). The first three stated are known as the "general grounds" of a motion for new trial, and the latter is supplementary thereto.

The contention that "the verdict is decidedly and strongly against the weight of the evidence" (ground (c) above) is addressed to the trial court. Appellate courts consider only the sufficiency of the evidence (grounds (a) and (b)), not the weight of the evidence. The weight of the evidence was considered by the jury at the trial and the trial judge in his ruling on the general grounds. *Ridley v. State,* 236 Ga. 147, 149 (223 SE2d 131) (1976); *Blackwell v. State,* 139 Ga. App. 477 (1) (228 SE2d 612) (1976). Our only question is whether there is any evidence authorizing the verdict.

"On appeals from findings of guilt, the presumption of innocence no longer prevails, the fact finders have determined the credibility of witnesses, the fact finders have been convinced beyond a reasonable doubt, and the appellate courts review the evidence only to determine if there is any evidence sufficient to authorize the fact finder to return the verdict of guilty." *Ridley v. State,* supra, p. 149; *Blackwell v. State,* supra. There was evidence to authorize the jury to find the accused guilty, and the evidence supports the verdict.

There was no fatal variance between the allegata and probata. The accused fails to specify any variance. "One of the main purposes of the indictment is to give the

---

[3] Probably intended to read "since the probata did not equal the allegata."

person charged notice of that particular crime against which he must defend. Most 'variances' take nothing away from the perfectly adequate notice contained in the indictment." *Green v. State,* 124 Ga. App. 469, 470 (184 SE2d 194) (1971); *Burkett v. State,* 133 Ga. App. 728, 733 (3a) (212 SE2d 870) (1975). The evidence adduced at the trial and the allegations in the indictment sufficiently correspond.

We find no error, there was ample evidence to support the verdict, and the judgment is affirmed.

*Judgment affirmed. Deen, P. J., and Marshall, J., concur.*

ARGUED MARCH 2, 1977 — DECIDED MARCH 18, 1977 — REHEARING DENIED MARCH 30, 1977.

*Louise T. Hornsby,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Dean R. Davis, Assistant District Attorneys,* for appellee.