## 59108. CAUSEY et al. v. THE STATE.

CARLEY, Judge.

Appellants, Burl Eugene Causey and Burl Eugene Causey, Jr., along with Vickie Darlene McGinnis, were indicted for conspiring to commit murder. The indictment stated that appellants "did conspire one with the other to commit the offense of murder on the person of F. Larry Salmon and the said Burl Eugene Causey, Burl Eugene Causey, Jr. and Vickie Darlene McGinnis in furtherance of said conspiracy did commit the overt acts of paying to Charles L. Baylor, acting under the name of Bunny Eckert $500.00 to kill and murder the said F. Larry Salmon; furnishing to said Charles L. Baylor, acting under the name of Bunny Eckert a sawed-off shotgun for said purpose; advising said Charles L. Baylor, acting under the name of Bunny Eckert, of the location of the said F. Larry Salmon's residence and place of business; pointing out to said Charles L. Baylor, acting under the name of Bunny Eckert the identity of the said F. Larry Salmon; and advising said Charles L. Baylor, acting under the name of Bunny Eckert of possible escape routes after the said F. Larry Salmon was killed and murdered."

At the trial the evidence revealed that in June of 1978 Hugh Don Smith, a convicted felon, agreed to act as an informant for the Bureau of Alcohol, Tobacco and Firearms, a department of the United States Treasury, in exchange for a possible sentence reduction. In mid-July appellant, Causey, Sr. met with Smith and during the course of their conversation Causey, Sr. expressed extreme anger at district attorney F. Larry Salmon. In general, Causey, Sr.'s animosity for Salmon stemmed from a number of past encounters members of the Causey family had with Salmon in his role as district attorney. In particular, Causey, Sr.'s son, Steve Jack, was incarcerated at the time of the aforestated meeting and Causey, Sr. believed that Salmon was directly responsible for Causey, Sr.'s inability to obtain the release of Steve Jack on bond. A couple of days later Smith again met with Causey, Sr. and at this second meeting, Causey, Sr. continued expressing animosity towards Salmon and stated that Salmon should be killed. Causey, Sr. further stated that he knew a "hit man" in Tennessee who was not a professional, but was inexpensive. In response to the aforesaid statement, Smith indicated that he knew a professional hit man in Texas, but that he would be expensive. Causey, Sr. requested Smith

to contact the man in Texas and asked Smith if he would pay one-half of the fee. Smith agreed. On July 27th, Smith contacted a representative of the Bureau of Alcohol, Tobacco and Firearms and relayed the substance of his conversations with Causey, Sr. and it was arranged that Charlie Baylor, an undercover agent for the bureau, would pose as Bunny Eckert, a professional hit man from Texas and additional arrangements were made for electronic surveillance.

The evidence further revealed that Baylor met with Causey, Sr. and Smith on August 10th whereupon it was agreed that Baylor would kill Salmon on behalf of Causey, Sr. and Smith for a total fee of $8,000 with a down payment of $1,000. Smith and Causey, Sr. each paid Baylor $500 representing their respective shares of the down payment. Causey, Jr. showed Baylor the general vicinity near Salmon's house and pointed out various escape routes and rode with Baylor to pick up two shotguns from his (Causey, Jr.'s) stepsister. Causey, Jr. actually went into his stepsister's house and procured the aforesaid weapons.

The jury found appellants guilty of conspiracy to commit murder and returned a verdict of acquittal as to McGinnis. After the denial of their motion for new trial, appellants filed a notice of appeal and, in this court, enumerate eleven alleged errors by the trial court.

1. Appellants' Enumerations 1, 4 and 7 cite as error the denial of their motion for a new trial and the denial of their motions for a directed verdict of acquittal at the completion of the state's case and again at the conclusion of the evidence. Appellants contend that the motion for new trial should have been granted in that there was not sufficient evidence, produced by the state, and that the verdict and judgment were not supported by the evidence and were contrary to the law and the weight of the evidence.

A defendant is entitled to a directed verdict only where there is no conflict in the evidence, and the evidence introduced, with all reasonable deductions and inferences therefrom, demands a verdict of not guilty. Code Ann. § 27-1802 (Ga. L. 1971, pp. 460, 461). On appeal of the overruling of a motion for directed verdict of acquittal, the appellate court can consider all of the evidence in the case and this is true whether the denial of such motion occurs at the close of the state's case or at the conclusion of all evidence. *Bethay v. State,* 235 Ga. 371 (219 SE2d 743) (1975). While the jury can and must weigh and analyze the evidence, an appellate court is restricted to determining whether or not there is sufficient evidence to support the verdict of guilty. *Davis v. State,* 151 Ga. App. 222, 223 (259 SE2d

207) (1979); *Kendrick v. State,* 146 Ga. App. 513 (246 SE2d 505) (1978). The evidence introduced with all reasonable deductions and inferences therefrom did not demand a verdict of not guilty.

The question of the existence of a conspiracy may be shown by circumstantial evidence. *Hurt v. State,* 239 Ga. 665 (238 SE2d 542) (1977); *Harris v. State,* 236 Ga. 242 (223 SE2d 643) (1976). While the essential element of the charge is the common design or purpose between two or more persons to commit an unlawful act, it need not appear that the parties met together either formally or informally or that they entered into a formal agreement. Neither is it essential that the conspirators formulated their unlawful objective either by words or writings. It is sufficient that two or more persons in any manner either expressly or tacitly came to a mutual understanding that they would accomplish the unlawful design. *Walden v. State,* 121 Ga. App. 142 (173 SE2d 110) (1970). The evidence here is clearly sufficient to support the verdict and our review of the record compels our conclusion that any rational trior of fact could reasonably have found from the evidence proof of the guilt of appellants beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Green v. State,* 152 Ga. App. 387 (262 SE2d 639) (1979).

2. In Enumeration 2 appellants allege that the court erred in overruling the general and special demurrers to the indictment, as amended. Appellants contend that the allegations of the indictment were insufficient in that the same did not charge appellants with an offense under the laws of this state and that said allegations were so vague and indefinite appellants could not properly prepare a defense to the charges contained therein. In particular, appellants allege the indictment is defective in that it neither sets forth the date of each overt act nor specifies which overt act was done by each of the appellants.

Code § 26-3201 (Ga. L. 1968, pp. 1249, 1335; 1969, pp. 857, 867; 1977, p. 601) provides in part: "A person commits a conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy . . ." The aforesaid Code section in conjunction with the substantive offense of murder, Code Ann. § 26-1101, defines a crime under the laws of this state. *Orkin v. State,* 236 Ga. 176 (223 SE2d 61) (1976).

"Every indictment . . . shall be deemed sufficiently technical and correct, which states the offense in the terms and language of this Code, or so plainly that the nature of the offense charged may easily be understood by the jury . . ." Code Ann. § 27-701. The

indictment in this case clearly charges appellants with unlawfully conspiring one with the other to commit the offense of murder upon a named person. Furthermore, it sets forth the date of the charged offense and enumerates the overt acts done to effect the object of the alleged conspiracy. The indictment is not vague and ambiguous. It apprises the appellants of the charges against them with sufficient clarity to permit them to adequately prepare their defense and is sufficiently technical and correct — so plain that the nature of the offense charged may easily be understood by the jury. *Chenault v. State,* 234 Ga. 216 (215 SE2d 223) (1975).

In view of the fact that the indictment states that the charged offense occurred "on or about August 10, 1978" and in view of the fact that a reference to each of the overt acts alleged by the state is contained therein, the failure to specify the exact dates of each overt act does not render the indictment demurrable for vagueness. *Callahan v. State,* 148 Ga. App. 555 (251 SE2d 790) (1978). Similarly, the indictment is not insufficient because of its failure to specify which of the appellants did each overt act set forth therein. Each of the participants in a conspiracy is responsible for the acts of the others and, thus, it is of no consequence that the indictment did not specify which of the appellants did each overt act. *Burke v. State,* 234 Ga. 512 (216 SE2d 812) (1975). Therefore, Enumeration 2 is without merit.

3. Appellants' Enumeration 3 complains that because the state improperly presented in the presence of the jury evidence of appellant Causey, Sr.'s character, the trial court erred in denying their motion for mistrial. On direct examination district attorney Salmon testified that he had prosecuted appellant Causey, Sr. The aforesaid testimony was presented prior to Causey, Sr.'s character being placed in issue. Normally, no evidence of general bad character of prior convictions is admissible unless and until the defendant has first put his character in issue. Code Ann. § 38-415 (Ga. L. 1868, p. 24; 1874, pp. 22, 23; 1878-79, p. 53; 1962, pp. 133, 134; 1973, pp. 292, 294). However, evidence showing intent, motive, plan, scheme and bent of mind is admissible although such evidence may also place in issue the character of the defendant. *Davis v. State,* 233 Ga. 638 (212 SE2d 814) (1975); *Rini v. State,* 236 Ga. 715 (225 SE2d 234) (1976). In this case the intended object of the alleged conspiracy to commit murder was the district attorney. The alleged motive for appellant, Causey, Sr., desiring to have the district attorney killed was partially based upon the fact that Salmon had prosecuted him in the past on a charge of receiving stolen property, which had cost him several thousand dollars to ultimately defend

and which on two occasions resulted in decisions by this court. In this case, the evidence of prior prosecutions of appellant, Causey, Sr., was introduced to prove motive and is clearly admissible for that purpose. Consequently, the trial court did not err in denying appellant's request for a mistrial.

4. Enumerations 5 and 8 deal with the issue of whether appellants were entrapped as a matter of law by government officers into committing overt acts in furtherance of the conspiracy. Based on this ground, Enumeration 5 assigns error on the denial of a motion for directed verdict of acquittal at the close of the state's evidence and Enumeration 8 attacks as erroneous the denial of a motion for a directed verdict of acquittal at the close of all the evidence.

"Entrapment exists where the idea and the intention to commit the act originate with a police officer, who, by undue persuasion and deceitful means, induces the defendant to violate the law. But there is no extrapment where the officer merely furnishes an opportunity to a defendant who is ready to commit the offense." *Hill v. State,* 225 Ga. 117, 119 (166 SE2d 338) (1969); Code Ann. § 26-905 (Ga. L. 1968, pp. 1249, 1274).

The evidence in this case shows that appellant, Causey, Sr., was upset with district attorney Salmon and that during his initial conversations with the informer, Causey, Sr. expressed his animosity toward Salmon and stated that Salmon should be killed. After Causey, Sr. stated that he knew of an inexpensive "hit man" in Nashville, the informer stated that he knew of a professional "hit man" in Texas, but that he was expensive. Causey, Sr. then requested the informer to contact the "hit man" from Texas. This is sufficient evidence of predisposition and intent on the part of appellant, Causey, Sr., to authorize submission of the entrapment defense to the jury. *Orkin v. State,* supra.

5. In Enumeration 6, appellants contend that the trial court erred in allowing the jury to have, during its deliberation, the transcripts of tape recorded conversations along with the actual tapes which were played during the trial. Appellants did not object to the admission into evidence of the actual tape recorded conversations. During the course of the trial the transcripts were furnished to the jurors in order to assist them in following the tape recorded conversations and appellants did not object to the jurors being furnished such transcripts. The record reveals that the transcripts were admitted for the sole purpose of assisting the jury in following the conversations on the tapes should they decide to play any of the tapes during their deliberation and not for the truthfulness of the statements contained therein. The admission of

a transcript of a tape recording is permissible when a proper foundation has been laid. *Estes v. State,* 232 Ga. 703 (208 SE2d 806) (1974). In this case, there was testimony relating to the type of recording device utilized, the authenticity and correctness of the recording, and testimony as to the manner or method in which the transcripts were prepared. In view of the fact that the transcripts were admitted for the stated limited purpose and in view of the fact that the transcripts had previously been used by the jurors during the course of the trial, without objection by appellants, the trial court committed no reversible error in his conduct of this aspect of the trial. *Brooks v. State,* 141 Ga. App. 725 (234 SE2d 541) (1977).

6. In Enumeration 10, appellants argue that the trial court erred in charging the jury that "one who interposes entrapment as a defense may not controvert the allegations of the indictment." There is no error in this charge as it is a correct statement of the law. *Mafnas v. State,* 149 Ga. App. 286 (254 SE2d 409) (1979).

7. In Enumeration 9, appellants contend the trial court erred in charging the jury as to the law relating to parties aiding and abetting in a crime. Conspirators, in a sense, are aiders and abettors since they assist each other in the furtherance of unlawful agreement which is the embodiment of the conspiracy. The inclusion in the charge to the jury of instructions referring to the law of parties was not clearly harmful as to constitute reversible error. When viewing the charge as a whole, as is required, Enumeration 9 is without merit. *Hilton v. State,* 233 Ga. 11 (209 SE2d 606) (1974).

8. In enumeration of error 11, appellants urge that the trial court erred in not charging in accordance with nine written requests to charge. While requests to charge numbers 1, 2, 3, 6, 8, 11, 18 and 20 were not given exactly as requested, the language contained therein substantially appears in the court's general charge which adequately covered the areas of law and the basic principles on which appellants desired the jury to be charged. It was not error to fail to charge in the exact language requested. *Teal v. State,* 234 Ga. 159 (214 SE2d 888) (1975).

Also, the trial court did not err in failing to charge request number 23 relating to the instruction that "where the facts in evidence and all reasonable deductions therefrom, present two equal theories, one of guilt, and the other consistent with innocence, the justice and humanity of the law compel the acceptance of the theory which is consistent with innocence." This charge was not required and the appellants have failed to demonstrate how they were harmed by the failure of the trial court to so instruct the jury. *Fleming v. State,* 137 Ga. App. 805 (224 SE2d 792) (1976); *Brooks v.*

*State,* supra.

None of the enumerations of error being meritorious, the judgment of the trial court is affirmed.

*Judgment affirmed. Quillian, P. J., and Shulman, J., concur.*

SUBMITTED JANUARY 7, 1980 — DECIDED MARCH 6, 1980 — REHEARING DENIED MARCH 20, 1980 —

*Ronald G. Shedd,* for appellants.

*F. Larry Salmon, District Attorney, John W. Dunsmore, Jr., Assistant Attorney General,* for appellee.