## 58771. GOODWIN et al. v. THE STATE.

BIRDSONG, Judge.

Appellants Goodwin and Manley on interlocutory appeal challenge the trial court's denial of their motion to suppress evidence which was overheard through an electronic "body bug" worn by an informant, and evidence seized from a rented police car which was lent to the appellant at appellant's suggestion for the sole purpose of picking up a load of marijuana to sell to the informant. The evidence shows that Sgt. Kleckly of the Atlanta Police Department rented an automobile, a Monte Carlo, at the Atlanta Airport and turned it over to the Detective Archangeles. Archangeles and an informant drove the Monte Carlo to Clayton County to a restaurant parking lot. There they met with detectives from Cobb, DeKalb, and Clayton Counties and "decided how the deal would basically go." A meeting had been arranged between the informant and appellant Goodwin. At this time, an electronic body bug was placed on the informant by one of the other detectives at the restaurant. Over objection, Archangeles was permitted to testify at

the motion to suppress hearing that the informant stated he had no aversion to wearing the body bug, and that he would feel more comfortable with it on and would prefer to wear it. The informant, under surveillance, drove the Monte Carlo to a nearby gas station where he met appellant Goodwin and followed him to a shopping center parking lot. Appellant Goodwin then made a telephone call, which was not overheard; but his statements to the informant immediately following that phone call were overheard through the electronic listening device by the nearby detectives. At the motion to suppress hearing, Detective Sproat testified from memory that the appellant said: "It won't take but a few minutes for me to go to the location and load the dope [or weed] and be back," and that appellant then said that the best and easiest way to do the deal would be for him to take the other's (the informant's) car and just switch cars when he returned with the dope, that the deal would go down a lot quicker if they did it that way; and that appellant told the informant "you wait in my car and I'll take your car and load up the dope and be back." Appellant was followed surreptitiously to a nearby house as he drove in what was, unbeknownst to him, a car rented by the police; he backed into the garage and emerged a few minutes later with appellant Manley as a passenger, and drove back to the shopping center and parked beside the informant. As appellants got out of the car, the police converged on them, placed them under arrest, patted them down, and took the keys away. The police unlocked the trunk and seized three bales of marijuana. At the hearing on motion to suppress, Detective Sproat stated that they had not gotten or attempted to get a search warrant for the automobile because they did not need one for something that is under police control. Except for the statements overheard through the body bug hidden on the informant, which were testified to solely from memory by Detective Sproat and except for the circumstances we have described, there was no evidence of any illegal activity. The informant was not called as a witness.

Appellant contends that the warrantless search of the automobile was improper because the appellant had a reasonable expectation of privacy in the automobile which the informant lent to him, and, moreover, was without probable cause because no proper foundation was laid for the admissibility of appellant's electronically-overheard statements. The state contends that the police had an unquestionable right to search their own property, and that, in any event, probable cause existed because of Goodwin's overheard admission that he was going to pick up the dope and bring it back, coupled with all the other circumstances observed by

48

the police. *Held:*

1. (a) Appellants contend that the testimony as to the body bug communication is governed by *Steve M. Solomon Jr., Inc. v. Edgar,* 92 Ga. App. 207, 211 (3) (88 SE2d 167), which held that a proper, specifically stated foundation must be laid for use of tapes of recorded conversation; appellants argue that it would be absurd to hold that evidence of an unrecorded communication is governed by any lesser standard. The matter here under consideration is governed by Code § 26-3006, which limits the proscriptions of Code § 26-3001, prohibiting the clandestine surveillance or overhearing of private conversations of another. Code § 26-3006 authorizes the *"interception, recording and divulging* of a message sent by telephone . . . or any other means of communication when . . . the message shall be *initiated or instigated* by a person and the message [constitutes] the *commission of a crime or is directly in furtherance of a crime, provided at least one party thereto shall consent."* (Emphasis supplied.) *State v. Birge,* 240 Ga. 501 (241 SE2d 213); *Cross v. State,* 128 Ga. App. 837 (198 SE2d 338). It is settled that Code § 26-3006 allows law enforcement officers to intercept, record, and divulge the conversation, where at least one party thereto consents, and where the conversation is a crime or is in furtherance of a crime. *Mitchell v. State,* 239 Ga. 3, 5 (235 SE2d 509). Furthermore, a state agent may divulge contents of conversations with an accused by carrying radio equipment which simultaneously transmits conversations to other agents monitoring the transmission frequency. *Cross,* supra. The police officers who are simultaneously listening to the conversation through electronic amplification of the conversation may testify as to what they have heard, since the import of the electronically-aided eavesdropping is the same as if the officers were eavesdropping outside an open window or sitting in the same room. On Lee v. United States, 343 U. S. 747, 754 (72 SC 967, 96 LE 1270); see also United States v. White, 401 U. S. 745, 751-753 (91 SC 1122, 28 LE2d 453); Goldman v. United States, 316 U. S. 129, 134 (62 SC 993, 86 LE 1322). As was said in Irvine v. California, 347 U. S. 128, 131 (74 SC 381, 98 LE 561), "All that was heard . . . was what an eavesdropper . . . might have heard. We do not suppose it is illegal to testify to what another person is heard to say merely because he is saying it into a telephone." When the police agents testify to what they have heard in this manner, such evidence is direct, primary evidence of a conversation overheard through a device which by its nature does nothing more than amplify and transmit, much as the telephone does (see Irvine v. California,

supra). We have found no authority which requires testimony concerning a telephone conversation to be authenticated by a showing that the user of the telephone is familiar with the mechanics of that device and that the telephone was in working order and not defective. Where the evidence offered is a *tape recording* of the conversation, that evidence is secondary (see *Brooks v. State,* 141 Ga. App. 725, 735 (234 SE2d 541) because it, and particularly any transcription of it, is a mechanical reproduction of the actual conversation. *Solomon,* supra p. 213. It is true that in the case before us, the officer testified that he was not able to hear all of the conversations between the informant and appellant Goodwin, that there were gaps in some of the conversation heard and there was some interference in the transmission possibly caused by the proximity of the scene to the airport, but the same might be said of a conversation heard without the aid of an electronic amplification and listening device. The officer testified positively as to what he did hear (see *Lynn v. State,* 140 Ga. 387, 395 (79 SE 29); *Woolfolk v. State,* 85 Ga. 69 (2), 99 (11 SE 814)), and that he recognized the informant's voice during the conversation and watched the informant and appellant Goodwin engage in conversation at the same time. Since the effect of the overhearing of conversation, through electronic amplification, was the same as if it were heard over the garden wall (see On Lee, supra), questions of reliability of equipment or reproduction which properly may arise in cases of secondary evidence such as tape recordings and transcriptions (see *Solomon,* supra) do not arise in the case of testimony of the witness who overhears and repeats the conversations. The question is one of the credibility of the witness, who is subject to cross examination and whose testimony is given such weight as the trier of fact determines is warranted. On Lee, supra, p. 757. The evidence given by the officer as to what he heard was admissible in this case.

(b) Appellant argues further that it was necessary to affirmatively establish the informant's consent to the electronic surveillance pursuant to Code § 26-3006, and that the requirements of Code § 26-3006 are not satisfied by the police agent's hearsay testimony that the informant said he had no aversion to wearing the body bug. Some guidance may be found in the wording of Code § 26-3006, which permits surveillance of a message sent by any means "in those instances wherein the message shall be *initiated or instigated* by person" and where the message shall constitute a crime or is directly in furtherance of a crime, provided at least one party consents to the interception, recording and divulging. We are

unable to perceive any purpose or significance to the words "wherein the message shall be initiated or instigated by a person," unless the legislature intended the statute to govern specifically a conversation or communication arranged or anticipated by one of the parties for the purpose of interception, recording, and divulging. All messages and conversations that have ever been or ever will be are "initiated or instigated by a person"; consequently, those delineating words either mean nothing at all, which we cannot concede, or they refer expressly, though somewhat obscurely, to situations which are arranged or engaged in for the purpose of surveillance. Code § 26-3006 and the entire line of cases which have permitted electronic surveillance where one party to the conversation consents, are based on the concept that "no interest legitimately protected by the Fourth Amendment is involved," in such circumstances, for the Fourth Amendment "affords no protection to a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." United States v. White, supra; Hoffa v. United States, 385 U. S. 293 (87 SC 408, 17 LE2d 374); and see, generally, concerning the "legitimate expectation of privacy," Rakas v. Illinois, 439 U. S. 128 (99 SC 421, 58 LE2d 387). If one of the parties initiates or instigates the conversation for purposes of surveillance, and knowingly wears a device on his person which simultaneously amplifies the conversation and thus divulges it to others, then he is simply engaging in what he has a right to do and the wrongdoer cannot object. The requirement of "consent" of one of the parties ensures that the overhearing by third parties is by the *divulgence* of one of the parties to the conversation, which is constitutionally permissible (United States v. White, supra); and not by surreptitious interception unbeknownst to any party to the conversation, which is constitutionally impermissible, Katz. v. United States, 389 U. S. 347 (88 SC 507, 19 LE2d 576); and see United States v. White, supra, p. 749. If one of the parties *divulges* the conversation to others, he has perforce ,consented its interception. See also *Cross v. State,* supra. In the precise circumstances of this case, it is therefore not necessary that the voluntariness of the consent to the overhearing by one of the parties to the conversation be established prima facie by testimony of the party himself. The fact that he himself knowingly divulged it obviates the necessity of proving that he consented to its overhearing.

2. Appellants contend they had an expectation of privacy in the contents of the trunk of the automobile which they borrowed

from the informant. We will not go so far as to hold, as the state contends, that all constitutional rights of the accused are obliterated by the fact that the vehicle was the rented property of law enforcement officials, and that therefore the police could, as contended by the officers themselves in this case, immediately and without any probable cause always search their own property without regard for any factual circumstance or any constitutional considerations whatsoever. Assuming, but not deciding, that appellant Goodwin had a legitimate expectation of privacy in the automobile and had standing to object to the search (see generally, Rakas v. Illinois, supra), the conversation overheard a few minutes before, wherein he suggested that he take the Monte Carlo and load the marijuana in it and then switch cars again when he returned, and where he then took the car and immediately returned, provided probable cause to believe that when he returned with the Monte Carlo he had brought a load of marijuana in its trunk. The passenger Manley had no legitimate expectation of privacy and no standing to object to the search (Rakas, supra). As to both appellants, the trial court's denial of the motion to suppress was not error.

*Judgment affirmed. Deen, C. J., Quillian, P. J., McMurray, P. J., Banke and Sognier, JJ., concur. Smith, Shulman and Carley, JJ., dissent.*

Submitted October 18, 1979 — Decided
March 19, 1980.

*R. David Botts*, for appellants.
*Robert E. Keller, District Attorney, Clifford A. Sticher, Assistant District Attorney*, for appellee.

Smith, Judge, dissenting.

I dissent to Division 1 of the majority opinion. The motion to suppress should have been granted.

Appellants, Goodwin, et al. (hereinafter referred to as Goodwin) appeal the denial of their motion to suppress contraband seized by law enforcement officers. Goodwin enumerates as error the trial court's admission of testimony relating to an electronically intercepted communication involving Goodwin and a decoy without a proper foundation having been laid. In support of this contention, Goodwin contends that the state: (a) failed to prove the decoy's consent to wearing a transmitter as required by Code Ann. § 26-3006; and, (b) denied him his Sixth Amendment right of

confrontation with the decoy.

Goodwin met with and sold some marijuana to an individual who turned out to be a decoy.[1] The decoy, unknown to Goodwin, was wearing a transmitting device (hereinafter referred to as a bug, body bug or bugging device). Goodwin's arrest was based upon the bugged conversation between Goodwin and the decoy. A police officer, Atlanta Detective Larry W. Sproat, was manning the receiving device and was the only one listening to the bugged conversation. He was allowed by the court to testify as to what he heard from the bugging device. There was no recording of the conversation. The only evidence of consent, as required under Code Ann. § 26-3006, was the testimony of Sproat and Detective Louis Archangeles, Atlanta Police Department. Sproat testified that the decoy cooperated and understood what he was doing. Archangeles testified that the decoy stated he had no "aversion" to wearing the body bug. Neither of them stated unequivocally that the decoy consented to its use. Neither of the witnesses placed the bug upon the decoy. Although Sproat was present when another person placed the bug upon the decoy, Archangeles was not. Archangeles and the decoy were riding together from Atlanta to Clayton County when the decoy allegedly stated he had no aversion to wearing the bug.

Goodwin's attorneys tried to talk to the officers involved in the case and the officers refused. The attorneys for Goodwin made an effort to find out the name of the decoy but to no avail. Neither at the suppression hearing nor at the trial of the case did the state have the decoy present as a witness. The state made no effort to explain why the decoy was not present as a witness nor why they would not reveal his name to Goodwin.

Code § 26-3001 provides: "It shall be unlawful for: a) any person in a clandestine manner to intentionally overhear, transmit, or record or attempt to overhear, transmit or record the private conversation of another which shall originate in any private place . . ." Code § 26-3006 provides a statutory exception to § 26-3001, "in those instances wherein the message shall be initiated or instigated by a person and the message shall constitute the commission of a crime or is directly in the furtherance of a crime, *provided at least one party thereto shall consent.*" (Emphasis

---

[1]Under Georgia law, the individual was a decoy because he was the purchaser for the police in a sale of contraband. *Wilson v. Hopper,* 234 Ga. 859 (218 SE2d 573) (1975).

supplied.) "No evidence obtained in a manner which violates any of the provisions of this chapter shall be admissible in any court of the state except to prove violations of . . . Chapter [26-30]." Code § 26-3007.

Goodwin's entire defense is based upon whether or not the decoy consented to the use of a bug. Goodwin contends that there is insufficient proof of consent. What amounts to proof of consent under this Code section has never been defined by our courts. Black's Law Dictionary defines "consent" as follows: "A concurrence of wills. Voluntarily yielding the will to the proposition of another; acquiescence . . . It is an act unclouded by fraud, *duress*, or *sometimes even mistake* . . . There is a difference between *consenting* and *submitting*. Every *consent involves submission;* but a *mere submission does not necessarily involve consent* . . . As used in the law of rape 'consent' means consent of the will, and submission under the influence of fear or terror cannot amount to real consent . . . [T]here must be a choice between resistance and assent . . ." (Emphasis supplied.)

Although the state's witnesses testified that the decoy "knew what was happening," "had no aversion" to wearing the bug, and "cooperated" with the police, the record contains no affirmative evidence of actual consent on the part of the decoy. Without such evidence, the testimony relating to the bugged conversations was inadmissible.

The very fact that the state would not provide Goodwin with the decoy's identity indicates that the state had something to hide. The state did not claim that divulging the decoy's identity would jeopardize any police undercover investigations. The state's conduct in this case has resulted in a denial of appellant's right to confront the witnesses against him. See *Crosby v. State,* 90 Ga. App. 63, 65 (82 SE2d 38) (1954).

Inasmuch as this is a case of first impression in Georgia, the law of other jurisdictions may provide some guidance. The Florida Constitution of 1968 in Art. 1, Sec. 12 provides, inter alia, that "the right of the people . . . against the unreasonable interception of private communications by any means, shall not be violated." The Florida statute relating to the "consent exception" is similar to Code § 26-3006: the communication may be intercepted provided one of the parties consents. The Supreme Court of Florida, in Tollett v. State, Fla. 272 S2d 490 (1973), held that it was unreasonable to allow recordings to be played before the jury where the consenting one to the recording was not in court and available for cross examination. See also Koran v. State, 213 S2d 735 (1968), (Fla.

App. 3rd Dist). Under Tollett, consent must be shown by the testimony of the one wearing the bug. Necessarily, this individual must be present in court for cross examination. "If the procedure adopted by the State in this case were approved it would be precedent that the State may bypass a magistrate in the matter of probable cause; that at trial the state may introduce an unwarranted intercepted communication without the presence of the alleged participating informant as a material witness to testify as to his consent to the interception . . . It eliminates an accused's opportunity to cross-examine the alleged informant . . . Generally, it furthers the invasion of privacy by the police, encourages wiretapping, entrapment and manufactured evidence." Tollett, supra, at p. 495.

The state's failure to reveal the decoy's identity effectively destroyed Goodwin's ability to establish that the decoy had not consented to wearing the bugging device. Since the admissibility of the evidence obtained by the state through the bugging device (which formed the basis of the state's case) is conditioned upon the consent of the decoy, the state's refusal to reveal the decoy's identity denied Goodwin access to testimony that could be essential to his defense. See Roviaro v. United States, 353 U. S. 53 (77 SC 623, 1 LE2d 639) (1957); *Crosby v. State,* supra; ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Electronic Surveillance (Approved Draft, 1971); 2 Fla. St. U. L. Rev. 188 (1974).

Perhaps in our zeal to convict the guilty we overlook the fact that we are also making the law that will be applied to the innocent. In this case, the state could have easily complied with Goodwin's request for the decoy's identity. Was this too much for the state to do under the facts of this case? Can the court place its stamp of approval on the state's refusal to comply with Goodwin's request? I believe not.

I am authorized to state that Judge Shulman and Judge Carley join in this dissent.